## GOODWIN GAS STOVE & METER CO.'S APPEAL.

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued March 25, 1887—Decided January 3, 1888.

1. Though, generally, performance of an ordinary contract for the sale of chattels will not be enforced in equity, yet, where in a contract for the sale of stocks in a private or business corporation, the transfer is subject to a trust imposed by the contract, and the facts are such that a remedy at law for damages would be inadequate and impracticable, equity will take jurisdiction and decree relief in the way of specific performance.

2. Where an attorney at law is the legal adviser of both the parties to an action, and, in the preparation of papers at the instance of both, receives communications from each in the presence of the other, such communications are not privileged from disclosure.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ.; STERRETT, J., absent.

No. 95 January Term 1887, Sup. Ct.; court below, No. 719 December Term 1884, C. P. No. 3, in equity.

The proceeding in the court below was a bill in equity filed by H. Dumont Wagner, in his own right and as trustee under a certain agreement, dated January 27, 1880, against the Goodwin Gas Stove & Meter Company and William Wallace Goodwin, to enforce the specific performance of said agreement. The facts upon which relief was sought, and the questions of law arising clearly appear in the report of *Mr. John Scott, Jr.,*

the master to whom the cause was referred after issue joined, which report was as follows:

The bill, after reciting the incorporation of the company defendant, the certificate of which bears date December 31, 1879, and is duly recorded, states that William Wallace Goodwin, the defendant, being the owner of two certain certificates of the stock of the said company respectively for twenty and fifty shares, executed the two powers of attorney indorsed on the said certificates, constituting said Wagner his true and lawful attorney, to assign and transfer to himself, or any person or persons, subject to an agreement that day made, to wit, January 27, 1880, the whole of the said seventy shares.

The prayer of the plaintiff is practically for the specific performance of the said agreement, for an accounting and other and further relief; plaintiff averring that the defendant, Goodwin, has failed and refused to carry out his agreement, and that the company defendant had refused to allow said plaintiff to transfer said seventy shares to himself as trustee, or to transfer to him individually such shares as had been earned under the agreement.

The separate answer of the company denies that as a corporation it has any knowledge of the facts of the agreement, and submits itself to the court in the premises.

The separate answer of Mr. Goodwin, the other defendant, admits the fact of the agreement, but denies that he ever had any such understanding of the agreement as is set up in the bill, or that there is any equity in such a contention. He declares moreover that the full consideration of said agreement is not set forth; that the plaintiff agreed to act as superintendent of the company for five years, and that he failed to do so, and that this agreement on the part of the plaintiff was a part of the consideration of said agreement of January 27, 1880. He denies also that it was his intention, in executing said agreement, to sell said seventy shares of stock to the plaintiff, to be paid for only by the excess of dividends above six per cent., but that the plaintiff was to pay him some amount in addition thereto.

The agreement referred to is before us in extenso, and its proper construction and meaning under the evidence and the law is the question to be decided.

The facts are that in the summer of 1879 Mr. Goodwin, the defendant, who had bought out his former business partner, was desirous of forming a corporation for the purpose of carrying on the business in which he had been engaged, viz.: the manufacture of meters and gas machines. He associated with him Mr. Wagner, the plaintiff, who agreed to put in a certain amount of capital, and to endeavor to induce others to take stock in the concern. Mr. Wagner was a gas engineer, and the relations between him and Mr. Goodwin had been very friendly. Their negotiations resulted in a written agreement, under date of July 1, 1879, the provisions of which may be summarized as follows:

1. It was agreed to organize a corporation under the general law, to be called the "W. W. Goodwin Meter Company," with a capital stock of $200,000—2,000 shares at $100 par value.

2. Goodwin was to put in the meter works, No. 1016 Filbert street, machinery, etc., for which he was to receive 1050 shares of the stock of the corporation.

Wagner agreed to pay into the corporation $7,000 in cash for which he was to receive 100 shares of stock, full paid.

"3. The sum of seven thousand dollars, to be paid as aforesaid by H. Dumont Wagner, shall be secured to him, and ten per cent. at least per annum profit thereon guaranteed to him, either by the issue to him of preferred stock to that amount, or by the bond of the company, with warrant of attorney attached, or in some other manner to be mutually agreed upon between the parties hereto.

"4. William W. Goodwin shall be president of the said corporation, at a salary for the first year of six thousand dollars; and H. Dumont Wagner shall be appointed the superintendent of the said corporation, under a written contract for five (5) years, at an annual compensation or salary of at least eighteen hundred dollars."

The fifth article provides that H. Dumont Wagner shall appoint Samuel Wagner his attorney, to act in his absence in this matter; and Wm. Wallace Goodwin covenants to carry out the terms of the agreement.

Mr. Wagner, the plaintiff, went abroad on company business at once, but returned before the incorporation. In his absence,

in pursuance of this agreement Samuel Wagner, as attorney, paid to Mr. Goodwin the $7,000, and received his receipts therefor; Mr. Goodwin giving, as the security required under the agreement, his judgment note for $7,000.

The corporation was formed in December, 1879, under the title of "The Goodwin Gas Stove and Meter Company," in which both Messrs. Goodwin and Wagner were named as incorporators. It was soon found impracticable to issue preferred stock to secure Mr. Wagner in his investment of $7,000, and after consultation and negotiation the second agreement was entered into, of date January 27, 1880. Samuel Wagner, Esq., acted as the attorney for both parties; their agreement was communicated to him, and he prepared a draft. The parties met again and the draft was submitted to them. Some additions were made, all at the suggestion of Mr. Goodwin, who was really the active party in making the agreement; and the agreement was then engrossed and executed. Inasmuch as this agreement is the whole base of the present action, it is herewith given at length:

Memorandum of agreement, made this twenty-seventh day of January, A. D. eighteen hundred and eighty (1880), between William W. Goodwin, of the one part, and H. Dumont Wagner, of the other part. Whereas, by agreement in writing dated the first day of July, A. D. 1879, the said H. Dumont Wagner did agree to contribute the sum of seven thousand dollars to the capital of a corporation, to be formed for the purpose of purchasing and succeeding to the business of the firm of W. W. Goodwin & Company, and the said W. W. Goodwin did agree to secure the payment of the said sum of seven thousand dollars, and ten per cent. annual profit thereon, by preferred stock or by the bond of the said corporation, or in some other manner to be mutually agreed upon. And whereas, the said H. Dumont Wagner has agreed to release his claim for security for the said sum of seven thousand dollars in consideration of the transfer and sale to him, upon the terms hereinafter mentioned, of seventy shares of the capital stock of the Goodwin Gas Stove and Meter Company, a corporation created under the laws of the commonwealth of Pennsylvania, and succeeding to the business of the said W. W. Goodwin & Company. Now this agreement witnesseth that the said

William W. Goodwin, for and in consideration of the premises and of the sum of one dollar to him in hand paid by the said H. Dumont Wagner, does covenant, promise and agree that he will forthwith transfer and assign to the said H. Dumont Wagner seventy shares of the capital stock of the said Goodwin Gas Stove and Meter Company held by him, the said William W. Goodwin; it being distinctly understood that the object of this transfer and agreement is to appoint the said H. Dumont Wagner trustee of the said amount of stock, and that he shall have the option of purchasing the said seventy shares of stock or any part thereof, and of paying for the same at its par value of one hundred dollars a share in instalments of not less than such amounts as the said stock shall from time to time earn in dividends exceeding six per centum per annum. And the said H. Dumont Wagner does covenant, promise and agree to pay the said William W. Goodwin all dividends on the said stock not exceeding six per centum until the stock is paid for, and to pay him all dividends on the said stock in excess of six per centum per annum, on account of the purchase of the stock at its par value, provided that one share of the said stock shall become absolutely the property of him, the said H. Dumont Wagner, for each one hundred dollars so paid on account of the purchase. Provided, however, that the said H. Dumont Wagner shall not be in any way liable for the price of the said stock unless the dividends thereon shall exceed six per centum, and then only to the extent of such excess, and that he shall not be liable for interest on the price of the stock in case the dividends thereon shall not amount to six per centum per annum in excess of the amount said stock shall earn. And provided, also, that the said H. Dumont Wagner shall have the right to terminate this agreement at any time, in which case he shall re-assign the said stock to the said William W. Goodwin, excepting so much thereof as shall have been paid for in the manner hereinbefore set forth. And it is hereby further agreed that the said William W. Goodwin shall have the right to vote at all meetings of the said corporation upon so much of said stock as shall not have been paid for under the terms of this agreement. And further, that the provisions of this agreement shall be binding upon and available in favor of the executors and administrators of both the parties hereto.

Master's Report.

" IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals, the day and year first above written.

WM. WALLACE GOODWIN [SEAL].

H. DUMONT WAGNER [SEAL].

Mr. Goodwin was the president of the company, and by successive elections he has continued in the office. Mr. Wagner was elected superintendent of the company, and was duly re-elected in 1881 and 1882.

At the time of the execution of the agreement of January 27, 1880, Mr. Wagner canceled and delivered up to Mr. Goodwin his (Wagner's) copy of the original agreement, and at the same time canceled and surrendered up the judgment note for $7,000 which Mr. Goodwin had given as the security Mr. Wagner was to get under said original agreement. These instruments were still in Mr. Goodwin's possession, and, having been produced upon call, are in evidence. Mr. Goodwin retained his copy uncanceled.

In July, 1882, Wagner presented a request for an indefinite leave of absence. This was refused, and he presented his resignation on the ground of ill health. This was accepted by the board of directors with expressions of regret. . . . . .

Mr. Wagner never signed any written contract to act as superintendent of the company for five years; no such contract was ever presented to him for signature, nor was he ever asked to sign such an agreement; nor does it appear that at any time subsequent to the first agreement he ever expressed any intention of so doing.

After the dividend was declared in 1881, Mr. Wagner called upon Mr. Goodwin to transfer to him such shares as had been earned under the agreement. Mr. Goodwin promised to attend to it, but appears never to have done so. Subsequently demands were made each year that the company should transfer to Mr. Wagner personally such shares of stock as he was entitled to under the agreement, and to Mr. Wagner as trustee the balance of said seventy shares.

All these demands were refused, until September 24, 1884, when Mr. Goodwin, upon the demand of Mr. Wagner by his attorney for a compliance with the agreement of January 27, 1880, and a transfer of such shares of stock as he was entitled to thereunder, delivered to Mr. Wagner the certificate for nine

shares of stock and his check as president for $45; the state-
ment of the secretary of the company being sent showing that
up to July 1, 1882, seventy shares of the capital stock of the
company had earned the sum of $945 in excess of six per cent.

Mr. Wagner accepted these nine shares on account, but
declined to receive the check. The nine shares were never
transferred to Mr. Wagner on the books of the company.

The company having refused to honor his demands any
further, this proceeding was instituted.

Mr. Wagner alleges in the bill that it was the purpose and
intention of the said William Wallace Goodwin, in executing
the aforesaid agreement and delivering the aforesaid certificates
of stock with the letters of attorney endorsed thereon, to sell
to him the whole of the aforesaid seventy shares of the capital
stock of said company; and it was the understanding of the
parties at the time of the execution of said agreement and
delivery of the said certificates, and thereafter, that he had
immediately exercised his option mentioned in said agreement,
and had thereby purchased the whole of the said seventy shares
of stock, to be paid for in strict accordance with the provi-
sions of the said instrument; and it was at all times under-
stood between the parties that all dividends paid to the said
William Wallace Goodwin upon the said seventy shares of
stock were to be considered as having been paid by him in
accordance with the terms of the said agreement in writing,
namely, the agreement of January 27, 1880.

Mr. Goodwin, in his separate answer, denies that it was his
purpose to sell the said seventy shares, or that it was under-
stood that the plaintiff had exercised his option and purchased
said stock. He admits, however, both in the answer and in
his testimony, that had Mr. Wagner remained in the employ
of the company and been willing to pay any amount, however
small, in addition to the excess of dividends, the stock would
have been transferred to him under the agreement.

There has been no evidence adduced at any time in the
cause showing that Mr. Wagner ever paid a dollar in excess.
of the amount earned above six per cent., and the company,
by its proper officers, has given him a certificate for the nine
shares of stock which, according to their calculation, the

seventy shares had earned under the agreement up to July 1, 1882, at which time Mr. Wagner's resignation took effect.

In view of the action of the defendants in giving to Mr. Wagner the certificate for the nine shares when he confessedly had never paid a dollar in excess of the dividends; and furthermore, in view of the unqualified admission by defendant's counsel, at the argument before the master, that so long as the plaintiff continued as superintendent, he was without doubt entitled to receive all stock earned by the excess of dividends, the master finds that the claim to additional payments was unfounded; and furthermore, that if it ever was seriously urged by the defendants, it has certainly been waived by their own action.

It is admitted that William Wallace Goodwin received all the dividends declared upon said stock, and that they are as stated in the bill, to wit: in 1881, 12 per cent.; in 1882, 12 per cent.; in 1883, 9 per cent.; in 1884, 10 per cent.; and that in 1885 a dividend of 8 per cent. was declared and paid.

It is also admitted that the stock of said company is not now and never has been placed upon the list of stocks purchasable in the Stock Exchange of the city of Philadelphia, or elsewhere, and that the same cannot be purchased in the market.

The points of issue, therefore, are resolved into the following:

1. Whether Samuel Wagner is a competent witness.

2. Whether the agreement that the plaintiff should act as superintendent of the company for five years was a part of the consideration of the second agreement, to wit, January 27, 1880.[8]

3. Is the cause one calling for relief in equity, or will equity decree specific performance of such a contract?

1. Samuel Wagner, who was called as a witness for the plaintiff, was the attorney who prepared both agreements. His testimony was objected to on the ground that he was incompetent to testify by reason of his professional relations in the matter. In the opinion of the master, his testimony corroborates the plaintiff, and the question of his competency is therefore important, because it practically is the weight which must move the scale in this case. As to the essential

part of the agreement there were but three parties who had any knowledge.   Of these, the plaintiff and defendant are two, and oppose each other in their testimony, and the witness whose competency we are considering is the third.   The importance of his testimony will be readily perceived.

The general rule, based upon public policy, is a wise and salutary one.   There is no doubt that an attorney is not only privileged but bound to keep secret all communications made to him by a client, while acting in the capacity of a legal adviser.   The reason of the rule, it is said, "is out of regard to the interests of justice, which cannot be upholden, and to the administration of justice, which cannot go on, without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations, which form the subject of all judicial proceedings."   Had Mr. Goodwin, in this instance, retained Samuel Wagner to act as counsel for him alone, and Mr. Wagner, the plaintiff, been represented by other counsel, I take it that, without question, neither counsel would have been a competent witness to testify what was the understanding and agreement between the clients. The written agreement in such case must speak for itself, in so far as they are concerned.   Each has availed himself of the services of one competent to protect his rights, and what instructions he received from the client, I take it, would be confidential and privileged.

Would the rule however be applied to one, albeit skilled in the law, to whom come two who have agreed between themselves, and who communicate their agreement to him for no other object or end than to have that agreement clad in legal phrase and reduced to writing?   Is there any disclosure of confidence there which must needs be protected for the good of anybody?   No confidence is given in regard to any matter either wishes to be secret from the other.   Both are present to hear all that is said.

As between them there are no rights to be protected from threatened encroachment, or to be enforced; but the single and only purpose of the employment of an attorney is that the agreement already entered into may be set forth in a legal and orderly manner.   Mr. Wagner says, "My professional relation to the matter was as one called upon to draw agreements em-

bodying the views of the parties." He did not advise in any way as to these views, but after they had been formed and the minds have met, he embodies their agreement, as communicated to him, in the written agreement; and now, when called upon, he testifies only that he did faithfully what he was employed to do; that the agreement was submitted to the parties in the form of the draft; that it was fully discussed; that the changes as suggested by Mr. Goodwin were made; and that finally the agreement, as engrosséd and signed, " embodied the distinct understanding" of the parties "at the time it was made." To the mind of the master, an attorney in such capacity acts only as a legal scrivener; does not become the repository of confidences within the rule of the law, and is a competent witness to testify to the agreement of the parties.[6]

2. Whether the agreement that the plaintiff should act as superintendent of the company for five years was a part of the consideration of the second agreement.[8]

The defendant avers that such an agreement was a great part of the consideration of the agreement of January 27, 1880. The plaintiff denies absolutely that such was the case, and avers that the second agreement represents upon its face the whole agreement between him and the defendant Goodwin; and furthermore, that such agreement was in full stead and substitution for the original agreement of July 1, 1879.

There is no question that at the time of the first agreement Mr. Wagner did make such an agreement as to superintendency, and it was incorporated into the writing as a part of fourth article thereof. Was this consideration also a part of the second agreement?

It does not appear upon the face of the writing, and must be inserted there, if at all, by the parol evidence which we have before us.

The broad rule laid down by our Supreme Court is that " parol evidence is not admissible to contradict or vary written instruments, unless (1) there has been fraud, accident or mistake in the creation of the instrument itself, or (2) unless there has been an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed."

In this case there is no allegation of fraud. On the contrary,. Mr. Goodwin, the defendant, expressly disclaims any inten- tion of making such a charge. Nor do we find any warrant for the belief that it is now being used fraudulently in viola- tion of a promise made at the time it was signed, and upon the faith of which it was executed. The plaintiff declares that no such promise was made at the time of the signing of the new agreement, and that the old agreement was thereby abrogated. He is supported in this by Mr. Samuel Wagner, who says that the agreement of January 27, 1880, "embodied the distinct understanding between my brother and Mr. Goodwin at the time it was made." Nor to the mind of the master is there any accident or mistake in law shown in the evidence. We have nothing but the bare allegation of Mr. Goodwin that it was his understanding throughout the whole affair that Mr. Wagner was to be the superintendent for five years, and that he had no other idea. This is the only point upon which Mr. Goodwin's memory is clear, but this he declares positively. Many of the facts had escaped his memory entirely, and his recollection as to others is very hazy, but this one fact stands out for him so prominently in the transaction that it seems it could not be forgotten. Do the facts corroborate Mr. Good- win, and do they assist him to bring together such testimony as would move a chancellor to reform the contract?

The evidence is that Mr. Goodwin had the contract before him in the draft and as engrossed; that there were several meetings at Mr. Samuel Wagner's office at which the agree- ment was discussed; Mr. Goodwin was careful to suggest sev- eral amendments and see that they were incorporated; that he seemed to be satisfied with the agreement as perfected, and that he understood it; that in all this time never was there any mention of his understanding that the plaintiff was to ren- der services in additional consideration for the agreement which were not specified in and required by the agreement. Is this consistent with the present statement, that these services to be rendered by Mr. Wagner were such a part of the consid- eration that now for his (Goodwin's) failure to receive them he (Goodwin) must be relieved from his agreement?

Again, Mr. Wagner canceled and delivered up to Mr. Good- win his (Wagner's) copy of the former agreement, as well as

the judgment note Mr. Goodwin had given for the ten per cent. guarantee, and Mr. Goodwin accepted them. This is certainly consistent with Mr. Wagner's statement of the facts. Is it so consistent with Mr. Goodwin's claim ? [7]

Moreover, at Mr. Goodwin's own instance and suggestion, that clause was inserted in the agreement, making the provisions thereof "binding upon and available in favor of the executors and administrators of both the parties hereto." Could a dead man be superintendent? Would it seem necessary to insert such a clause in a contract whose consideration was in such great part, it is alleged, an agreement to render personal services ?

In addition to the above, when Mr. Wagner presented his resignation to the company, we find that it was accepted without a word of protest from any one, so far as it appears in the evidence. Mr. Goodwin did not say to him, "Our agreement was based upon your continuing to act as superintendent, and by your failure to do so you forfeit your rights under that agreement." That would seem to be the natural and reasonable action of a man holding such views of the agreement as Mr. Goodwin would have the master adopt. But not so; and Mr. Goodwin writes him deploring the cause of his withdrawal, and expressing only the kindliest feelings.

The company also accepts his resignation, and in the friendly resolutions adopted expresses the hope of his early return. These again can hardly be called "corroborating circumstances" as regards Mr. Goodwin's testimony. The only circumstances found in all the evidence in corroboration of this testimony is that (1) Mr. Goodwin said to Mr. Jones, the secretary, that Mr. Wagner would now be with them, and (2) his neglect or refusal to order the stock transferred. It does not appear that ever Mr. Goodwin said that Mr. Wagner would be the superintendent for five years, and it is in evidence that in the meetings of a board of directors, over which Mr. Goodwin presided, Mr. Wagner was elected annually.

In view of all the facts, the master is of opinion that no such evidence has been here adduced as would justify a chancellor in reforming the contract, and by the law of Pennsylvania such evidence would be required in this case.

There certainly was consideration for the agreement on the

part of Mr. Goodwin even in the absence of any such agreement as is contended was made by Wagner. Wagner held the guarantee of Goodwin, admittedly a responsible man, that he should receive ten per cent. interest on his $7,000 invested. He held Mr. Goodwin's judgment note for $7,000 as security. He gives up this guarantee and this security, and accepts what? Certificates for seventy shares of stock, at a par value of $100 each, with letters of attorney constituting him trustee to assign those shares to himself or any person or persons, subject to a certain agreement that day made. That agreement gives him the option of purchasing said stock, and of paying therefor "at its par value of $100 per share in instalments of not less than such amounts as the said stock shall from time to time earn in dividends exceeding six per cent. per annum." Wagner covenants to pay Goodwin all such dividends in excess of six per cent. on account of such purchase, but expressly guards against any liability for either the principal or any interest thereon in case the stock does not earn six per cent. In other words, Mr. Goodwin would get six per cent. on the stock or as much as it earned up to six per cent., while Mr. Wagner got nothing unless the stock earned more than six per cent., and in such case must apply everything above six per cent. to paying for the stock, and was entitled to one share for every such $100 of dividends. The transaction was in effect a loan of $7,000 by Mr. Goodwin to Mr. Wagner, with which he (Wagner) purchased stock, Mr. Goodwin to receive six per cent. on his money, or, if it earned less, to get all it earned, and Mr. Wagner to pay back the loan by what the money earned, if anything, above six per cent. Unless the stock earned six per cent. and more, Mr. Wagner got nothing. Mr. Goodwin, so far as giving him a voice in the corporation was concerned, still owned the stock, and Wagner had given up a sure ten per cent. on his $7,000 for something which might possibly bring him nothing. In view of what Mr. Wagner gave up and the contingencies of which he took the chances, this does not seem to us in any wise an inequitable or unconscionable bargain.

In consideration of the so-called loan he had made, Mr. Goodwin would receive six per cent., provided the stock bought with the money earned so much, and if it did not, he got all it

did earn; he was relieved of a guarantee that such stock would earn ten per cent., and with the guarantee had lifted off the incubus of a possible judgment for $7,000 entered upon his own warrant and confession. Furthermore, in view of the circumstances, and upon Mr. Goodwin's own statement of his relations with Mr. Wagner, it is not difficult to conceive of one gladly entering into such a contract with even less actual consideration moving to him. Goodwin admits his close relations with Wagner and his warm personal feelings towards him, his desire to have him with him, his indebtedness to him for procuring the new stockholders, for which service he (Goodwin) volunteered a payment of $3,000. Other motives might be suggested which would prompt such action as was taken. But the question of motive need not be considered. No matter what it was. It was adjudged sufficient at the time. The contract was made, and that is all we are called upon to consider, unless there should be such clear, convincing proof as would lead us to reform the writing and insert such missing part, supplied as it must be by parol testimony. Such proof is not found in this case. The master therefore finds as facts: (1) That the agreement was made upon no other consideration than that named, and (2) That this agreement is and was meant to be in lieu and substitution for the agreement of July 1, 1879.[9]

The master further finds that Wagner did exercise the option given him by the said agreement, and thereby purchased said stock. By the contract itself he covenanted to do so. He expressly agreed to "pay the said William Wallace Goodwin . . . . . all dividends on said stock in excess of six per cent. per annum, on account of the purchase of the stock at its par value, provided one share of the said stock shall become absolutely the property of him, the said H. Dumont Wagner, for each one hundred dollars so paid on account of the purchase." Even if this was not an exercise of the option, as, in the opinion of the master, it is, Wagner certainly did so when, as soon as the first dividend had been declared, he demanded a transfer to him of the four shares earned.[10]

Having exercised his option and purchased said stock, to be paid for under the terms of the agreement, it follows that the dividends thereon declared were the property of Mr. Wagner;

and inasmuch as, in the absence of any declaration and proof to the contrary, it must be presumed that he complied with his contract, the dividends admitted to have been received by Mr. Goodwin must be considered as paid to him (Goodwin), in accordance with the terms of the contract, that is to say, six per cent. to Mr. Goodwin absolutely, and the excess above said percentage " on account of the purchase of said stock."

Testimony was offered by the defendants for the purpose of showing that the plaintiff had not properly performed his duties as superintendent while with the company. The master is of opinion that such testimony is neither competent nor relevant, and has therefore not taken it into consideration.

3. Under the facts as found is the cause one calling for relief in equity, or will equity decree specific performance of such a contract?

This contract concerns stock—personal property. The relief asked is really the specific performance of the terms of the contract. The general rule is that equity will not decree specific performance of contracts for the delivery of personal property, stock in particular. The reason of the rule is that the plaintiff can be compensated in damages, can be paid such a sum of money as will purchase the exact equivalent of that which has been agreed to be transferred. Unless, therefore, there is something in the nature of the personalty, or in the character and terms of the contract, to take it out of the general rule, the plaintiff must look to the law for damages, and cannot successfully invoke the aid of a chancellor. Is the nature of this stock such, and are the character and terms of the contract such, as to take them out of the general rule?

The stock is not listed in the Stock Exchange of this city or elsewhere. It cannot be bought in the market. It has no market price. So far as the master is informed there have been no open sales, all transfers having presumably been inter partes. It would seem to be difficult, if not impossible, to measure in money the value of such stock. Based upon its earning power, an estimate could be made of its value, and that sum of money fixed as the damages. The remedy then would not be complete. The damages must first be made out of some one whose ability to pay is not in evidence; and moreover, when the money damages are paid, stock in the same company

Master's Report.

cannot be procured. Other stock may possibly be purchased, but while its earning powers may now be equal to those of the stock in question, non constat that they will continue to be equal, or that the circumstances and conditions of the two corporations' are not so widely different that the real values of the stocks as investment securities, albeit to-day paying the same dividends, may not be very far apart.

The condition of the contract itself affords a still stronger argument. Here are provided a series of payments to extend over a series of years, in some of which payments may be made on account of the purchase of the stock, and in others none at all. Even under the most favorable circumstances, judging by business experience generally and by the record of this very company, a considerable number of years must elapse before the stock is paid for under the terms of the contract. If the contingencies and possibilities of all these years be taken into account—and it is but reasonable and just that they should be—any estimate of the value of this stock embraced in this contract, to be just to either party, must be based upon nothing more substantial than the merest conjecture, and built up by the baldest guesswork, and must be such as in the end would work inequity one way or the other. The master is of the opinion that under such circumstances there could be no such just and exact ascertainment of damages as equity desires to see made when she remands a suitor to the adequate remedy he possesses in law.

Moreover, under the circumstances of this particular case, the master is of the opinion that a court of equity should exercise its powers to decree a specific performance of the contract, in view of the fact that the plaintiff already holds the legal title to the stock in question, and has in this proceeding established his equitable title to said stock. To remand him to his remedy at law would be only to multiply litigation, which both equity and the law discourage, and even then, as already indicated, would leave him to a remedy whose relief is decidedly problematical.

Relief in equity being not of right, but in the discretion of the court, it is submitted the court should exercise its discretion in the way and manner least vexatious and best calculated to accomplish the end sought, and in this case, in the opinion of

the master, such relief will be given most easily and effectually by a decree as prayed for.

Under the contract, as interpreted by the master, and under the evidence as to the dividends declared and paid, Mr. Wagner, the plaintiff, upon the cancellation of the certificate for nine shares of the stock of the Goodwin Gas and Stove Meter Company, is entitled to receive stock and cash, as per the following calculation : . . .

The master therefore finds that the plaintiff has purchased and paid for thirteen shares of the said seventy shares of stock of the Goodwin Gas Stove and Meter Company, and has become the absolute owner thereof, and is entitled to a certificate for the same, issued in the usual course; further that he has paid to the said defendant, Goodwin, the sum of $58 on account of the purchase of other of the said shares under the aforesaid agreement; further, that the defendant, Goodwin, has had and received from dividends upon shares of stock, which belong to the plaintiff, the several sums of $48, $72, $100, $96, making the total sum of $316 of the plaintiff's moneys, which he ought to pay over to the plaintiff, with interest on each of the said sums from the date of the respective payments thereof to him; and further, that the plaintiff now holds the remaining fifty-seven shares of the said seventy shares in trust for the uses and purposes set forth in the said agreement of January 27, 1880, and is entitled to have a certificate for the same issued to him as trustee. Inasmuch as the plaintiff has now in his possession a certificate received from the defendant, Goodwin, purporting to certify that he is the owner of nine shares of the capital stock of said company, which shares, it appears in testimony, have never been transferred to said plaintiff, and do not appear upon the books of the company to be owned by him, the master recommends that a decree be made directing the defendant company, upon the surrender to Goodwin of said certificate for nine shares, and the further surrender to the defendant company of the certificates Nos. 30 and 47 for fifty and twenty shares of stock respectively, now held by him, to issue to the said plaintiff in his own right a new certificate for thirteen shares of said stock, and further, to issue to the said plaintiff as trustee a new certificate for fifty-seven shares of said stock, in accordance with the above finding.

Decree of Court below.

In conclusion, the master finds that it is not necessary to decree the accounting asked by the plaintiff in the first and second prayers of the bill, since the master has been enabled by the testimony and admissions of the defendants to state a full account as above set forth; he further finds that the plaintiff is entitled to the relief prayed for by the latter portion of the second prayer and by the third, fourth and fifth prayers of his bill.

A form of decree is appended proper to carry the findings of the master into effect if the court shall approve and confirm this report.

To this report various exceptions were filed by the defendants and overruled by the master. The report being filed and the exceptions renewed in court, after argument thereof, the court confirmed the report of the master and signed the following decree as recommended:

And now, October 7, 1886, the report of the master, filed May 31, 1886, is confirmed absolutely, and thereupon it is ordered, adjudged and decreed that the plaintiff, H. Dumont Wagner, shall deliver to the defendant, William Wallace Goodwin, certificate No. for nine shares of the capital stock of the Goodwin Gas Stove and Meter Company of Philadelphia, and shall further surrender to the said Goodwin Gas Stove and Meter Company certificate No. 30 for fifty shares of said capital stock and certificate No. 47 for twenty shares of said capital stock, and thereupon the said Goodwin Gas Stove and Meter Company shall permit the said H. Dumont Wagner to transfer upon the books of said company, under the power of attorney indorsed upon the said certificates Nos. 30 and 47, thirteen of the said seventy shares to himself in his own right and fifty-seven of the said seventy shares to himself as trustee; and shall issue and deliver to the said H. Dumont Wagner certificates of ownership of said shares of stock in accordance with the said two several transfers.[1]

And it is further ordered, adjudged and decreed that the said Goodwin Gas Stove and Meter Company are enjoined at all times hereafter from paying to the said William Wallace Goodwin, and the said William Wallace Goodwin is enjoined from receiving at any time hereafter from the said company, any

and all dividends which shall have been or shall hereafter be declared from and after March, 1885, upon the said seventy shares of stock or any part or parcel thereof.[2]

And it is further ordered, adjudged and decreed that the said Goodwin Gas Stove and Meter Company shall pay over all dividends which shall hereafter be declared upon the said seventy shares of stock to the legal holder or holders thereof at the time such dividends shall be declared.

And it is further ordered, adjudged and decreed that the said William Wallace Goodwin shall pay over to the said H Dumont Wagner in cash the sum of $316 lawful money of the United States of America, together with lawful interest thereon as follows, to wit: upon $48 parcel thereof from March, 1882; upon $72 parcel thereof from March, 1883; upon $100 parcel there of from March, 1884; and upon the remaining $96 parcel thereof from March, 1885.[3]

The defendants then took this appeal assigning for error :

1–3. The parts of the decree marked.[1 2 3]

5–10. The affirmance of the master's findings.[5 to 10]

12. The confirming of the master's report.

*Mr. Samuel C. Perkins*, for the appellants :

1. It is submitted that Samuel Wagner, Jr., was the professional adviser of Goodwin in regard to the preparing of both papers which constituted the contract between the parties; and, while he acted also in a professional capacity for the plaintiff, he is not a competent witness for either party against the other in matters which were within the scope of his professional duties towards either.

2. But even if he were competent, the evidence of Mr. Wagner does not sustain the finding of the master. On the contrary, it supports the defendant Goodwin, that the paper of July 1, 1879, was a subsisting part of the agreement between the parties, except as modified in the specific details mentioned by the paper of January 27, 1880.

3. If the contention be correct that the agreement of July 1, 1879, was not abrogated, but only modified in the single respect of the security, then the arrangement for the continuance of plaintiff as superintendent of the company for five

years remained in full force, and was a material and substantive part of the original agreement out of which " the consideration of the second agreement arose," unaffected by the " modification."

4. The plaintiff has a full, complete and adequate remedy at law, and is not entitled to come into equity to enforce specific performance of à contract in regard to personal property, the stock in question. There are but few exceptions to the general rule, that contracts relating to personal chattels, stock, securities, etc., are not specifically enforcible in equity: Stayton v. Riddle, 114 Pa. 464; and where the jurisdiction is exceptional, the burden is necessarily on the plaintiff to bring himself within it. Though not listed and with no market value, the condition of the company, the nature and prospects of its business, and the prices which plaintiff himself got for the shares he sold, would afford adequate means for the assessment of damages ; and in such a case equity will not decree specific performance : Foll's App., 91 Pa. 434; Miss. & Mo. R. Co. v. Cromwell, 91 U. S. 643; Marquis of Normandy v. Lord Berkly, cited Cuddel v. Rutter, 5 Vin. Abr. 538, pl. 21 (a) ; Buxton v. Lister, 3 Atk. 384; Strasburg R. Co. v. Echternacht, 21 Pa. 220 ; Adderly v. Dixon, 1 S. & S. 607; Noyes v. Marsh, 123 Mass. 286 ; Ferguson v. Paschal, 11 Mo. 267; Jones v. Newhall, 115 Mass. 244; Mobley v. Morgan, 34 Pittsb. L. J. 201; Oriental Co. v. Briggs, 2 Johns. & H. 265; Sheffield Gas Co. v. Harrison, 17 Beav. 294; Fallon v. Railroad Co. 1 Dill. 125.

*Mr. Henry J. McCarthy* (with him *Mr. Wm. Nelson West*), for the appellee :

1. In such a cause as is now presented to this court, equity will decree the specific performance of the contract: Willis v. Railroad Co., 6 W. N. 461; 1 Story Eq. J., § 724; 1 Redf. Railways, 132*; Duncuft v. Albrecht, 12 Sim. 189: Cheale v. Kenyard, 3 De.G. & J. 27; Todd v. Taft, 7 Allen 371.

2. From the evidence and the master's finding of fact, it is manifest we are to look to the agreement of January 27, 1880, alone, for the consideration, and that that instrument cannot be contradicted or varied by the appellants unless there has been fraud, accident or mistake in its creation, or unless there has been an attempt to make a fraudulent use of it: Rowand

v. Finney, 96 Pa. 196; North and West Branch Ry. Co. v. Swank, 105 Pa. 555; Phillips v. Meily, 106 Pa. 536.

3. Mr. Samuel Wagner, Jr., was a competent witness. He acted as the legal assistant of both parties, and was not the repository of the confidences of either: Borum v. Fouts, 15 Ind. 50; DeWolf v. Strader, 26 Ill. 225.

OPINION, MR. JUSTICE CLARK:

It is a well settled doctrine that equity will not, in general, decree the specific performance of contracts concerning chattels. The reason assigned for this is, that their money value, recovered as damages, will enable the party to purchase others in the market of like kind and quality. In the United States, as well as in England, contracts for public securities, government stocks, bonds, etc., will not be specifically enforced; no especial value attaches to one share of stock, or one bond, over another; the money which will pay for one will as readily purchase another. To this rule there are doubtless exceptions, but the rule is so general in its application that the exceptions are but few: Stayton v. Riddle, 114 Pa. 464. Although a different doctrine may perhaps exist elsewhere, as to contracts concerning stocks and bonds of merely private or business corporations, in the United States the principle seems to be well established by the weight of authority, that they will not be carried into effect in equity except under very special circumstances, such as render the remedy at law wholly inadequate or damages impracticable: Pomeroy's Eq., 1402. The same general principles govern in contracts for the sale of stocks of this character, as in the sale of other personal property; if the breach can be fully compensated, equity will not interfere; but when, notwithstanding the payment of the money value of the stock, the plaintiff will still necessarily lose a substantial benefit, and thereby remain uncompensated, specific performance may be decreed: Waterman Spec. Perf., § 19.

In Dungan v. Dohnart, an unreported case, decided at nisi prius and referred to in a note to Railroad Co. v. Stichter, 11 W. N. 325, Mr Justice AGNEW, after referring to the cases, said: "In an ordinary contract for the sale or transfer of stock, where there is no fiduciary relation between the parties, no peculiar circumstances attending the stock, and no trust de-

clared or arising by operation of law, or other fact in the contract, which would make a verdict for damages inadequate relief, there is no reason for specific performance other than in every case of a sale of a chattel. The non-delivery or refusal to transfer can be easily compensated in damages."

The doctrine has in some cases been carried to this extent: that if a contract to convey stock is clear and definite, and the uncertain value of the stock renders it difficult to do justice by an award of damages, specific performance will be decreed: Abb. Pr., N. S., 300; 31 How. Pr., 38; Treasurer v. Commercial Co., 23 Cal. 390. This would appear to have been the view entertained by Mr. Justice Thompson, in Sank v. Union St. Ship Co., a case tried at nisi prius, and reported in 5 Phila. 499. "I incline much," says the learned Justice, "towards the distinction made by Vice-chancellor Shadwell, in Duncroft v. Albrecht, 12 Sim. 189, between public stocks of a known market value and stocks of a particular company with none in market, and recognized by the Lord Chancellor in DeGex and Jones, 27. The former resembles ordinary property with known values, while the latter resembles more the case of specific or peculiar property, with a value contingent or uncertain, which, it has been held, the only adequate remedy is to give the thing itself: 1 Lead. Cas. in Eq., 757, and 1 Eq. Juris., 724." Whether the distinction taken in the case cited, may ultimately be recognized to the full extent stated, we cannot say, but the general underlying principle seems to be established, that in a sale of stocks in a merely private or business corporation, when from any proper cause it is plain that the remedy at law is inadequate or damages impracticable, specific relief may be awarded.

As to the case now under consideration, it is fair to assume that the security for the principal investment of $7,000, and for the dividends upon it at the rate of ten per cent. per annum, was the inducement for Wagner to enter into the contract of July 1, 1879; and when, on January 27, 1880, he agreed to waive his right to that security, it was under the special inducement that he was to have, in addition to the shares he then had, seventy other shares on the terms of the latter contract; shares that would ultimately be paid for, if paid for at all, out of their earnings, in instalments equal to

the excess of the dividends thereon over six per cent. in each year. The contract of 1880 disclosed the special terms upon which the investment was actually made. Wagner was to receive not only the dividends upon the shares he purchased with his original investment, but was entitled, also, from time to time, to such of the seventy shares in dispute as would be paid for by the excess stated; and the title to the seventy shares was actually transferred to him, in trust, under the contract. He held the shares as a trustee; if transferred on the books, the shares must necessarily have been transferred to him on the footing of that trust. As they were earned, however, they were to become Wagner's own shares, freed from the trust, the dividends thereon payable to him, and he was entitled to have such further assurance from Goodwin as would liberate them from the trust, and authorize the transfer to him absolutely on the books of the company. The case is in some respects a peculiar one; Wagner already has the title to these seventy shares; he holds the certificate transferred in writing, and delivered to him by Goodwin; but the transfer being subject to a trust imposed upon them by the parties, he cannot avail himself of them as his own until they are relieved of that trust. The transaction is not therefore a simple sale and purchase of stock. The question presented is, whether or not the terms of the trust have been satisfied, as to the whole or any part of the seventy shares, to which Wagner already has title; if they have, he is entitled to a transfer to his own use; if they have not, he must still hold the title subject thereto. It cannot be doubted, we think, that equity has jurisdiction in such a case, not only against Goodwin, but against the company, especially as the shares have no recognized market value, and their value, even if ascertained, would not necessarily, as against either, be the proper measure of damages. The seventy shares, having been transferred to Wagner in trust under the agreement, he was entitled as the trustee to a transfer on the books, and, as dividends were declared from time to time, he was entitled, at his option, to an absolute transfer, discharged of the trust, for as many shares as were paid by the excess of the dividends over six per °cent. annually.

We are of opinion, however, that the agreement of January 27, 1880, was only a modification of a particular part of

the previous contract of July 1, 1879.   The preamble, which precedes the paper of 1880, clearly shows that the special provision in the first contract, for security to Wagner, was the special subject matter of modification in the second.   But the clause which provides, that Wagner " shall be appointed the superintendent of the said corporation, under a written contract for five years, at an annual compensation or salary of at least eighteen hundred dollars," would seem to be a provision made in the interest and favor of Wagner.   Wagner does not agree in express terms to serve as superintendent for five years, unless perhaps under a written agreement to that effect, and no such agreement was ever made; on the contrary he was elected from year to year, and had no assurance whatever of his continuance in office for five years.   The company was put under no obligation to retain him as superintendent, and he was under no obligation to continue in the company's service. The parties we think, did not intend their contract to be a guarantee in this respect.   If the condition and ownership in the stock had been such that Goodwin was not elected president of the company, at a salary of $6,000, did the parties contemplate that Wagner should be held responsible to Goodwin for that result?   We think not; yet this feature of the contract was as certainly obligatory upon one party as upon the other.   Moreover, when Wagner tendered his resignation, it was without complaint of any one accepted; Goodwin himself was present, favored this action of the board, and personally dictated the very complimentary response, which was given to Wagner's request.   He cannot now complain of that which, at the time, he approved, and which was consummated by the company, not only without any objection whatever, but with his full consent.

In the view which we have taken of this case, the testimony of Samuel Wagner becomes unimportant, and the question of his competency of little consequence in the case.   Samuel Wagner was, however, without doubt, a competent witness. If he was the legal adviser of any of these parties, he was the adviser of both of them, for the advice he gave was given to both, and the papers he prepared were prepared at the instance of both.   The matters communicated to him by either one of the parties were communicated in the presence of the other;

they were not in their nature private, and therefore could not have been the subject of any confidential disclosure. Wagner seems to have acted merely as a scrivener, and, although of the legal profession, his testimony would not thereby be rendered incompetent.

Upon an investigation of the whole case, we are of opinion that the decree of the learned court is right.

The decree is therefore affirmed, and the appeal dismissed, at the cost of the appellant.