## Doll, Executor, Appellant, v. Loesel et al.

*Trusts and trustees—Deed of trust—Suit to revoke—Irrevocable deed—Fraud—Findings of fact by chancellor—Evidence—Attorney at law—Privileged communication—When communication is not privileged.*

1. The absence of a power of revocation in a deed of trust does not tend to invalidate the trust where insertion of such power would defeat the object intended.

2. In a suit by a father against a son to set aside a deed of trust executed by the father to the son, a chancellor's findings of fact as to the nonexistence of fraud, coercion or undue influence in the transaction, will not be reversed, where the findings are supported by competent and sufficient evidence.

3. In such case, where the attorney who drew the deed was acting for both parties, communications between him and plaintiff will not be deemed privileged.

4. If plaintiff charged the attorney with fraud, the latter has the right to meet the charge, and privilege cannot be availed of to keep him silent under such imputation.

Argued January 11, 1927. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 26, Jan. T., 1927, by plaintiff, from decree of Erie Co., May T., 1924, No. 4, dismissing bill in equity, in case of A. M. Doll, Executor of Michael Loesel, deceased, v. Charles F. Loesel, Trustee, Charles F. Loesel et al. Affirmed.

Bill to set aside deed of trust. Before Bouton, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Bill dismissed by Rossiter, P. J., and Hirt, J. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*John B. Brooks,* with him *Charles H. English* and *Frank B. Quinn,* for appellant.—Michael Loesel had no intention to make a permanent disposition of his property and, under the circumstances of his advanced age and physical infirmities and the relationship of the contracting parties, the legal consequences of the absence of a power of revocation in the deed should have been explained to him: Corrigan v. Conway, 269 Pa. 373; Whelen's App., 70 Pa. 410; Russell's App., 75 Pa. 269.

The facts show that Michael Loesel executed the deed of trust under fear of loss of his property and fear of

prosecution, which fears were induced by Charles F. Loesel and others in order to prevent Michael Loesel from contracting any marriage and to prevent him from disposing of his property.

A confidential relationship existed between Michael Loesel and Charles F. Loesel, trustee, prior to and at the time of the execution of the trust: Darlington's Est., 147 Pa. 624; Stepp v. Frampton, 179 Pa. 284; Matthaei v. Pownall, 235 Pa. 460; Corrigan v. Conway, 269 Pa. 373.

The evidence of the attorney was inadmissible: Alexander v. Queen, 253 Pa. 195; Moore v. Bray, 10 Pa. 519.

*W. P. Gifford,* of *Gunnison, Fish, Gifford & Chapin,* with him *Marsh & Eaton, Wilbur R. Seabrook* and *J. O. Hertzler,* for appellees.—There is no allegation of mental impairment or evidence of weakened intellect, and there is nothing in the facts to impose the burden of proof on Charles F. Loesel, trustee in the deed of trust: Phillips Est., 244 Pa. 35; Friend's Est., 198 Pa. 363; Logan's Est., 195 Pa. 282; Caughey v. Bridenbaugh, 208 Pa. 414; York's Est., 185 Pa. 61; Tallman's Est., 148 Pa. 286; Worrall's App., 110 Pa. 349; Carney v. Carney, 196 Pa. 34.

Absence of a power of revocation cannot invalidate this deed of trust; a power of revocation would have defeated the very objects of the trust: Russell's App., 75 Pa. 269; King v. Trust Co., 278 Pa. 141; Neal v. Black, 177 Pa. 83; Reidy v. Small, 154 Pa. 505; Wilson v. Anderson, 186 Pa. 531; Seip's Est., 163 Pa. 423; Mitchell v. Mitchell, 212 Pa. 62; Hummel v. Kistner, 182 Pa. 216.

OPINION BY MR. JUSTICE SCHAFFER, March 14, 1927:

Michael Loesel executed an irrevocable deed of trust of all his property, in value about $200,000, to his son Charles F. Loesel. The deed is dated April 26, 1923.

VOL. CCLXXXVIII—34

Eleven months thereafter, on March 3, 1924, the grantor, seeking revocation of the deed, filed this bill in equity asking that it be set aside and that the property be reconveyed. Before final decree Michael Loesel died and his executor, who prosecutes this appeal, was substituted.

We think no good purpose will be served, at least in the precedential sense, by rehearsing all the facts in the somewhat voluminous record. We shall outline only such as are necessary to show the basis for our decision. The controversy is largely one of fact in which the findings of the chancellor, supported as they are by evidence, are controlling: Unger v. Edgewood Garage, 287 Pa. 14; Knorr v. Knorr, 286 Pa. 126.

Michael Loesel was eighty-nine years of age when he signed the deed. It was made to his son, who was the executor at that time named in his will. The grantor while aged and very deaf was in full possession of his faculties and was engaged in the active management of his business affairs. In the bill in equity he avers his full mental competence and his own testimony in the case shows it beyond peradventure. The deed gave the property to the son as trustee in trust to manage it, provided that out of the income he should pay for the care, support and maintenance of his father during his lifetime and at his death the property was to be conveyed to the persons designated in the deed. This disposition was the same as the father had previously made by will.

The occasion for the preparation of the deed of trust was the unwise conduct of the father brought to the attention of his daughters in connection with his contemplated marriage. His wife had been dead but a few weeks when one of the daughters learned that her father was proceeding to arrange a marriage and that he was to give the prospective enjoyer of connubial bliss with him the sum of $24,000 in cash and some valuable lots of ground. His children, learning of this, went to

him to remonstrate against the impropriety of such an act so shortly after the death of their mother and to warn him against the machinations of a woman who to their minds was designing to possess herself of his property. He admitted that he had made such an offer of marriage. On the trial it was shown that he had also proposed marriage to his housekeeper. A consultation was held by some of the children with a lawyer who had represented the father, their suggestion being that a guardian should be appointed for him. The attorney advised against such a course because of the father's strength of mind and counselled a deed of trust from him. When this conclusion was submitted to the father, he acquiesced in it. He was told by his children in substance that if he adopted this course very likely no proceedings would be brought against him by his disappointed bride-to-be, whereas, if he did not, she might pursue him with legal proceedings. The deed of trust was accordingly prepared by the lawyer, the father the day following the interview with his children having taken his will to the attorney and directed him to prepare a deed of trust to his son incorporating therein the provisions of the will. About two weeks was taken up in its preparation, during which the father several times inquired about it, manifesting impatience because it was not promptly brought to him.

After the deed was written the lawyer and his partner took it to the grantor's house, where it was read over by him, with the exception of that part of it which disposed of the property after his death; as to this he took the assurance of the lawyer, which was correct, that it agreed with the disposition made in his will. After reading the deed the grantor executed it, not only signing it at the end but on every page. The son who was present signed the clause appended to the deed, assuming the trust. Shortly after the deed was signed, the attorney sent a copy of it to the grantor, which was shown to have been in his possession. The grantor turned

over to his son leases, policies of insurance and other papers relating to the properties which he owned and for about ten months received from and receipted to his son for payments on account of income from the properties. The father expressed to others satisfaction with the arrangement he had made. After acquiescing in and acting under the deed of trust for almost a year, the grantor seeks in this proceeding to repudiate it, inspired so to do, the chancellor found, by one of his daughters who was dissatisfied with the distribution to be made of the property. The chancellor found that there was no fraud practiced upon the grantor in connection with the transaction and that he thoroughly understood the instrument which he had signed. He also found that there was no undue influence practiced upon him. Our reading of the testimony shows full warrant therein for these conclusions.

Appellant's main contention is that the deed should be set aside because it contains no power of revocation. Such a reservation of power by the grantor would have defeated the very purpose of the conveyance, which was to put his property, if possible, beyond the reach of a designing woman. The absence of a power of revocation in a deed of trust does not tend to invalidate the trust where the insertion of such power would defeat the object intended: King v. York Trust Co., 278 Pa. 141.

Under the evidence produced there is nothing in appellant's position that there was a confidential relation between the father and son which the latter used to his own advantage. The only relation existing was that customary between parent and child and there was no impropriety shown in anything done by the son.

Complaint is made because the chancellor permitted C. C. Eaton, Esq., the attorney who drew the deed of trust, to testify as to what transpired between the grantor and himself relative to the preparation and execution of the conveyance on the ground that what

occurred between them were privileged communications between attorney and client. We are not disposed to relax the rule, barring such communications, laid down in Alexander v. Queen, 253 Pa. 195, but this is not a case for the application of the rule. While it is true that on previous occasions the attorney whose testimony is challenged had acted for Michael Loesel, he was first consulted in this matter by Loesel's children and acted in their behalf as much as for the father. Where an attorney-at-law is the legal adviser of both the parties to a transaction and in the preparation of the papers at the instance of both receives communications from each in the presence of the other, such communications are not privileged from disclosures inter esse: Goodwin Gas, etc. Co.'s App., 117 Pa. 514; Seip's Est., 163 Pa. 423; Hummel v. Kistner, 182 Pa. 216; Brown v. Moosic Mountain Coal Co., 211 Pa. 579; Mitchell v. Mitchell, 212 Pa. 62; Leitch v. Diamond Nat. Bank, 234 Pa. 557, 569; Fogg's Est., 249 Pa. 63; Wigmore on Evidence (2d ed.), vol. 5, section 2312; 28 Ruling Case Law, page 566. For another reason at least part of the testimony of the attorney was admissible and not banned under the privileged communication rule. On the witness stand Michael Loesel had testified in substance that he had signed a blank piece of paper on which there was no typwriting at the time. This meant, if it was the truth, that a gross fraud had been perpetrated upon him, that after securing his signature a grant of all his property had been written above it. This was a direct attack on the integrity of the reputable member of the bar who had prepared the deed and had Michael Loesel sign it. This the attorney was entitled to meet and privilege could not be availed of to keep him silent under the imputation: Thomas v. Herring, 244 Pa. 550. What has been said as to the testimony of Mr. Eaton applies to that of his partner Mr. Marsh, whose competency as a witness was challenged on similar grounds.

The case was properly decided in the court below. We have considered all the assignments of error and find in none of them ground for reversal, accordingly they are overruled and the decree affirmed at appellant's cost.