## Ashman's Estate.

*Gift—Gift inter vivos—Intention—Delivery—Trust and trustees.*

1. To constitute a gift inter vivos two essential elements must combine: An intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith.

2. What is clearly intended as a voluntary assignment or a gift, but is imperfect as such, cannot be treated as a declaration of trust. If this were not so, an expression of present gift would in all cases amount to a declaration of trust, and any imperfect gift might be made effectual simply by converting it into a trust. There is no principle of equity which will perfect an imperfect gift, and a court of equity will not impute a trust where a trust was not in contemplation.

3. To create a trust there must be the expression of an intention, not to create a present gift, but to become a trustee; the acts or words relied upon must be unequivocal, plainly implying that the person holds the property as trustee.

4. Where a father declares in writing that he gives certain bonds to his son, but also provides in the writing that the bonds are not to be used until after his own death, and the gift is not followed by any delivery to the son, and there is no declaration on the part of the father that he holds the bonds or their proceeds in trust for the benefit of his son, and the father subsequently makes his will revoking all previous wills, and makes no reference in his will to the bonds, the son will not be entitled after the father's death to the bonds or the proceeds of any that may have been sold by the testator in his lifetime.

Argued Jan. 7, 1909. Appeal, No. 194, Jan. T., 1908, by Carrie T. A. Bye, Distributee, from decree of O. C. Phila. Co., Jan. T., 1908, No. 101, dismissing exceptions to adjudication in Estate of Howard N. Ashman, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication of DALLETT, J.

The court dismissed the exceptions in an opinion by ANDERSON, J.

*Error assigned* was in dismissing the exceptions.

*James W. Laws*, for appellant.—There was no gift executed in favor of the son: Trough's Est., 75 Pa. 115; Scott v. Lauman, 104 Pa. 593; Withers v. Weaver, 10 Pa. 391; Williams's App., 106 Pa. 116; Flanagan v. Nash, 185 Pa. 41; Reese v. Phila. Trust, etc., Co., 218 Pa. 150.

In all of the cases which have held that an executed gift was made, actual delivery took place and the donor reserved no interest in the corpus of the gift, but may have attached conditions to the gift, such as payment of interest: Malone's Est., 8 W. N. C. 179; Hani v. Ins. Co., 197 Pa. 276; Madeira's App., 17 W. N. C. 202; Commonwealth v. Compton, 137 Pa. 138; Pryor v. Morgan, 170 Pa. 568; Wise's Est., 182 Pa. 168; Funston v. Twining, 202 Pa. 88.

No valid trust was created in favor of the son: Crawford's App., 61 Pa. 52; Bond v. Bunting, 78 Pa. 210; Dickerson's App., 115 Pa. 198; Roberts's App., 85 Pa. 84; Smith's Est., 144 Pa. 428

*William H. Shoemaker*, with him *Frank E. Schermerhorn*, for appellee.—To show a gift inter vivos "the intention of the donor must be established by clear and precise evidence, and that the delivery be secundam subjectam matericen:" Madeira's App., 17 W. N. C. 202; Malone's Est., 8 W. N. C. 179; Hani v. Ins. Co., 197 Pa. 276; Fassett's App., 167 Pa. 448; Crawford's App., 61 Pa. 52; Piper's Est., 11 Phila. 141; Parker's Est., 3 Pa. Dist. Rep. 370; Herr's App., 5 W. & S. 494; Bond v. Bunting, 78 Pa. 210; Reese v. Phila. Trust, etc. Co., 218 Pa. 150; Beaumont v. Beaumont, 152 Fed. Repr. 55.

The words "but not to be used until after my decease unless I deem it necessary," mean either that the donor reserved control as trustee for the son, or that he reserved the interest on the bonds during the donor's life. In either case the gift of the principal of the bonds would be good: Reese v. Phila. Trust, etc., Co., 218 Pa. 150; Funston v. Twining, 202 Pa. 88; Wagoner's Est., 174 Pa. 558; Crawford's App., 61 Pa. 52; Bond v. Bunting, 78 Pa. 210; Beaumont v. Beaumont, 152 Fed. Repr. 55; Sourwine v. Claypool, 138 Pa. 126; Smith's Est., 144 Pa. 428.

The title to the bonds followed the ownership of the money, and it belonged to the beneficial owner of the title: Sourwine v. Claypool, 138 Pa. 126.

OPINION BY MR. JUSTICE POTTER, March 1, 1909:

This proceeding was the adjudication of the account of the executors under the will of Howard N. Ashman. The testator gave the residue of his estate to his son Charles T. Ashman and his daughter Carrie T. Bye in equal shares. At the audit the son presented a claim for $7,000, with interest from the date of the testator's death, as representing the proceeds of certain bonds which he alleged had been given to him by his father, the testator, in his lifetime. The foundation for the claim is a paper executed by the testator December 3, 1889, of which the following is a copy:

"Dec. 3, 1889. I this day give to my son Charles Bonds of the Union Pacific R. R. (4) four in number and $1000 in amount each making $4000 four thousand also of the Central Pacific ($3000) " three thousand or three bonds of one thousand

each making in all seven thousand dollars $7000, but not to be used until after my death unless I deem it necessary.

"H. N. ASHMAN.

" Witness Fred C. Mendel."

And on the same sheet of paper in June, 1896, he made the following note:

"June 1896. Having sold the above named Bonds after they became due I have invested Four thousand dollars in a mortgage at Asbury Park there remains three thousand dollars due Charles T. Ashman to be paid after my death.

"H. N. ASHMAN.

"E. D. Foulkrod.
"J. S. Weldon."

This paper was subsequently mailed to the claimant while he was in California. It will be noted that in each of these entries, which are relied upon by the appellee as declarations of trust, there are clear indications that whatever interest was intended to be given was to become effective only upon the death of the donor. In the first he says the bonds are "not to be used until after my death unless I deem it necessary;" and in the second he says, "there remains three thousand dollars due Charles T. Ashman, to be paid after my death."

Another paper, which was admitted in evidence without objection, which had been executed by the testator on March 27, 1877, more than twelve years prior to the first of the two statements above referred to, recited that he had received from his wife, Mary E. Ashman, the sum of $24,000, partly in money, but $7,000 of it in bonds, to be held by him in trust for the benefit of the two children, it being the mother's gift to them. Subsequently to the audit counsel agreed that the decedent had in one way or another, independent of the will, given to his son and daughter in equal shares real estate in which he had invested approximately $24,000. In this way the obligation imposed by this declaration of trust, as to funds received from his wife, was apparently satisfactorily discharged. It further appears, and was found as a fact by the auditing judge, that in 1886, previous to his second marriage, the testator made an

antenuptial agreement, providing for his intended wife an annuity for life in lieu of any interest in his estate. On January 25, 1887, he executed an intended will, whereby he made practically an equal distribution of his estate between his two children, subject to the annuity to his wife, and made no reference whatever to the bonds or their proceeds. In 1890, he executed another intended will in which he provided: "Third. I give and bequeath to my son Charles T. seven first mortgage bonds of One thousand Dollars each four of them of the Union Pacific Rail Road Company and the other three of the Central Pacific Rail-Road Company," and gave, subject to the wife's annuity, one-half of his estate to his son and the other half to his son as trustee for his sister, the testator's daughter. There can be no reasonable doubt but that the bonds here referred to were the identical bonds which in the paper of December 3, 1889, made a few months before, he manifested his intention of giving to his son Charles. Here he was manifesting the same purpose, but through a paper testamentary in character.

Then in 1897, he executed a codicil to a will made some years before, whereby after a devise of real estate, he gave to his son, as he put it, "also the equivalent of seven Thousand dollar bonds which has been paid to me—part of which is invested in bonds and mortgages at Asbury Park, N. J., and which seven Thousand dollars worth of bonds was the personal property of Charles T. Ashman. . . . . The bonds which I leave to my son Charles was my own personal property and not the mother's." Three years later, on April 20, 1900, he executed another codicil in which he expressed his wish that his daughter, Carrie T., should be co-executor with his son. And he further noted, "The Pacific Bonds left to my son Charles T. Ashman has been paid off and other property in Asbury Park bonds substituted." Finally, in 1902, he executed the will which was duly admitted to probate as testator's last will; in this he gave the residue of his estate, subject to the antenuptial agreement with his wife, to his son Charles T. Ashman and his daughter Carrie T. Bye, in equal shares. No mention whatever of any bonds was made.

Under all these facts, the son, Charles T. Ashman, claimed an

executed gift of $7,000 of bonds made to him by his father in his lifetime, and followed by declarations which it was contended were sufficient to establish a trust. As the bonds in question were admittedly sold by the testator in his lifetime, the son asked that their value should be awarded to him out of the estate. The auditing judge allowed the claim, and in so doing seems to have regarded the turning point in the case as being whether or not the bonds were part of the trust estate with which the testator charged himself as coming into his hands from his wife, for the benefit of the two children. It is practically conceded under the evidence of the declarations made by the testator, that the bonds which he at one time intended to give to his son, were his own property, and he could therefore do with them as he pleased. The question to be decided is, what did he do? The auditing judge failed to make clear his attitude on the question of whether the transaction was to be regarded as a completed gift, or as a declaration of trust. He seemed to lose sight of the requirement of the law, that complete and unconditional delivery is essential to the perfection of a gift. The claim to the bonds was based on an alleged gift inter vivos. As our Brother STEWART said, in the late case of Reese v. Phila. Trust, etc., Co., 218 Pa. 150, "To constitute a gift inter vivos two essential elements must combine: an intention to make the gift then and there, and such an actual or constructive delivery at the same time to the donee as divests the donor of all dominion over the subject, and invests the donee therewith." Nothing of that kind was shown in the present case. The intention to make a present gift of bonds did appear in the paper of December 3, 1889, but that intention was modified by the further expressed intention that the son was to have no use of the bonds until after the death of the donor. Nor was the intention to make a present gift carried into effect by any act, such as is required by the law in order to invest the right of property in the donee. There was no delivery of the bonds to the son, nor was he in any way given control over them. Neither were they marked by the donor or set apart by any visible impress upon them, of any intended change of ownership. Whatever the intention of the testator as to making a

present gift may have been, on December 3, 1889, that intention under the test of the law, was never perfected; and the gift was incomplete because the bonds were never delivered, and never passed from the dominion and control of the donor to that of the donee. But counsel for appellee argue that if the gift was incomplete, nevertheless the donor impressed upon the bonds a trust for the benefit of his son. The difficulty in the way of that contention is, that, as we read the papers signed by Howard N. Ashman, in so far as they indicate any intention to make a gift, it is an intention to make a present gift, and they do not show any intention on his part to become a trustee. An intention to make a present gift usually excludes the idea of a declaration of trust. As this court said in Smith's Estate, 144 Pa. 428 (434–435): "What is clearly intended as a voluntary assignment or a gift, but is imperfect as such, cannot be treated as a declaration of trust. If this were not so, an expression of present gift would in all cases amount to a declaration of trust, and any imperfect gift might be made effectual simply by converting it into a trust. There is no principle of equity which will perfect an imperfect gift, and a court of equity will not impute a trust where a trust was not in contemplation. Milroy v. Lord, 4 De Gex, F. & J. 264–274. Flanders v. Blandy, 45 Ohio St. 108." And Justice CLARK further points out that under the authorities "to create a trust there must be the expression of an intention, not to create a present gift, but to become a trustee," and that the law is now "well settled in accordance with the rule in Richards v. Delbridge, L. R. 18 Eq. 11–13, that, if the transaction is intended to be effected by gift, the court will not give it effect by construing it as a trust." It is further shown in the same opinion that to give validity to a declaration of trust (p. 438): "the acts or words relied upon must be unequivocal, plainly implying that the person holds the property as trustee: Martin v. Funk, 75 N. Y. 134. Therefore in Young v. Young, 80 N. Y. 422, where the donor signed a paper certifying simply that certain bonds belonged to his sons, but did not declare in any words of plain import that he held them in trust for them, the declaration was held to be insufficient." In the present case, we find no

declaration that the father was holding the bonds or their proceeds for the benefit of his son. On the contrary, he held the bonds as his own property, collecting the interest on them, and as they fell due, took the proceeds, which he invested and reinvested, and mingled the funds with the rest of his estate, in entire apparent disregard of any liability to account, as for a trust fund.

The true conclusion, it seems to us, upon this record as a whole, is that any intention which the testator may have had to make a present gift of the bonds in question to his son, was a fleeting one, which shortly afterwards was merged in his determination to dispose of the same subject-matter in his will. Even the paper of December 3, 1889, which begins with a clear manifestation of an intention to make a present gift, shades off in its last line into an equally clear intimation of a testamentary character, in that it provides that the bonds referred to are "not to be used until after my death." And in the note added to the same paper in June, 1896, reciting that the testator had sold the bonds, and invested part of the proceeds elsewhere, he provides that the balance of the money was not to be paid until after his death. Meantime the decedent himself had, as we pointed out before, in the most unequivocal way shown that he regarded the gift as testamentary, by his references to what was undoubtedly the same subject-matter, in his intended wills of 1890, 1897 and 1900. Unfortunately for the contention of the claimant in this case, when the testator made his last will in 1902, by which all former wills were revoked, he had apparently changed his mind, and all provisions as to any testamentary gift of the bonds in question or of their proceeds to the son, were dropped.

Under all the evidence in this case, we are unable to find that there was a completed gift of the bonds in question, by the father in his lifetime, to his son, Charles T. Ashman, nor do we find any valid or sufficient declaration that he held the bonds in trust for the son.

The award to Charles T. Ashman of $7,000, with interest thereon from the death of the testator, as representing the value of the bonds, is therefore set aside.

The assignments of error in so far as they relate to that award are sustained. To that extent, the decree of the orphans' court is modified. The costs of this appeal are to be borne by the appellee.