# Leitch *v.* Diamond National Bank of Pittsburgh, Appellant.

*Gifts—Delivery—Intention—Evidence—Husband and wife.*

1. If the language used by a donor is clear and unambiguous showing a clear intent to make a gift, and a belief on his part that he had done all that was necessary to complete it, then the act of delivery if slight and ambiguous, will be aided thereby, not, however, dispensing with an actual delivery; but rendering the gift valid where it would be deemed invalid, if the acts of delivery were uncertain or ambiguous. This principle applies particularly where a gift from a husband to a wife is involved.

2. A gift of bonds from a husband to a wife will be sustained where it appears that the husband took a box in a safe deposit vault separate from two other boxes in which he kept his own securities; that he designated the box as his wife's box, declaring that he was going to give to his wife all his negotiable bonds, and put them in the box which he had taken for her; that he placed certain securities in the box at the time, giving her a key to it; that she had access to the box subsequently, both alone and with her husband; that the husband had produced a list of bonds which he said belonged to his wife, and that both husband and wife made wills known to each other which clearly indicated that both regarded the bonds in the box as belonging to the wife.

3. The delivery of a gift may be proved by the declarations of the donor.

4. Where a husband has placed bonds in a box in a safe deposit vault which he has rented for his wife, and has declared that he had given her the bonds, his subsequent access to the box with her permission for the purpose of selling and re-investing

the bonds and for the purpose of placing therein additional bonds, is not inconsistent with the wife's ownership of the contents of the box.

5. In such a case an attorney-at-law is a competent witness after the husband's death as to what occurred at the time the bonds were originally deposited in the box, if it appears that the relation of attorney and client did not at the time subsist between the husband and the witness. If it appears that he was thereafter employed as counsel for both husband and wife in their joint business, he may testify as to conversations which took place in the presence of both.

Argued Nov. 3, 1911. Appeal, No. 234, Oct. T., 1911, by defendants from decree of C. P. No. 2, Allegheny Co., Jan. T., 1910, No. 445, on bill in equity in case of Robert H. Leitch, Executor of the Estate of Isabella Arnold, deceased, v. Diamond National Bank of Pittsburgh, et al. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

This was a bill in equity filed by Robert H. Leitch, executor of the estate of Isabella Arnold, deceased, against The Diamond National Bank of Pittsburgh, Pa., Robert J. Cleland, William C. Cleland, Thomas A. Cleland, James T. Arnold, and Robert J. Cleland, attorney in fact for James T. Arnold. The purpose of the bill was to obtain possession of certain bonds which at the time of the death of Mrs. Arnold were in the safe deposit vaults of the bank. It was alleged that these bonds were the property of Isabella Arnold, having been given to her by her husband, James T. Arnold. The

James T. Arnold and Isabella Arnold were husband and wife. They resided in Allegheny City and in 1906 he was 81 years of age and she was 68. They had no children and the husband's next of kin were three nephews, Robert J., William C., and Thomas A. Cleland. James T. Arnold was a man of wealth, which material facts as found by the trial judge, are as follows:

no property. He had three safe deposit boxes in The Diamond National Bank of Pittsburgh, numbered 125, 158 and 159, in which he kept his various securities and title papers. Previous to May, 1906, his wife had joint access with him to box 159.

In May, 1906, Mr. Arnold called at the office of Robert H. Leitch, a young lawyer, whose mother had been his lifelong friend, but who had previously rendered no legal services to either himself or his wife, and requested Mr. Leitch to accompany him to the bank. They went into the vault, where Mr. Arnold unlocked the three boxes, removed therefrom a part of the contents, which he placed on the table. He then told Mr. Leitch that he was going to give Mrs. Arnold all his negotiable bonds and would put them in a box which he then and there designated as hers. He then took certain securities from box 159, in which he said some of the bonds were, and threw them into box 158. In June, 1906, he said that he had placed all his negotiable bonds in Mrs. Arnold's box, 158, and that they were hers. In July, 1906, he requested Mr. Leitch to call at his house to prepare a will for Mrs. Arnold, whereby she was to dispose of the bonds he had given to her to various charitable institutions, and at the same time to draw a will for him. Mr. Leitch called as requested and Mrs. Arnold, in the presence of her husband and with a view to making her will, said that he had given her bonds then amounting to $110,000, and that he would give her other bonds that he would thereafter buy from time to time. Mrs. Arnold showed a list of charities showing specific bequests intended, which amounted to $90,000, with a balance of $20,000 to be given to the Woman's Board, and providing for payment of the collateral inheritance tax. At the same time Mr. Arnold produced a list of securities and said that the items marked "B" were the bonds owned by Mrs. Arnold and that the unchecked items on the list were stocks and memoranda that he wanted in his will. It was suggested by Mrs. Arnold

and agreed to by Mr. Arnold, after some slight protest, that, owing to his kindness in giving her the bonds and as a mark of gratitude, he should receive the interest on them during his life, and should have the right to enter her box, examine the bonds and cut off the coupons. He accepted the gift of the income and thereafter took and used the same, up to the time of his wife's death.

At the same time Mr. Arnold, in the presence of his wife, directed Mr. Leitch to prepare deeds for the conveyance of his real estate to the three Clelands, his nephews and next of kin, and a will by which he would dispose of his stocks and other securities. The deeds were prepared and executed.

Mrs. Arnold subsequently stated to Mr. Leitch in the presence of her husband that he had set apart a box for her, that all the bonds he had given her from time to time were in that box, that she had keys for all the boxes just as he had, which were in a desk which she pointed out, and that she could go to the boxes whenever she desired. Mr. Leitch suggested that she place all her bonds in a box in her own name, but she declined to do this because she had given her husband back the income for life, and she wanted him to go to the bank, see the bonds and remove the coupons, as he had done before.

On July 19, 1906, both Mr. and Mrs. Arnold executed wills drawn up in accordance with their previous instructions. The wills bore the same date and were executed simultaneously. Both were read and examined by them, and each knew the contents of the other's. Mr. Arnold witnessed his wife's will and she witnessed his. Mr. Leitch and the three Clelands were executors of the husband's will and Mr. Leitch alone of the wife's.

By Mrs. Arnold's will her husband was to receive, while he lived, all the interest and income from "all my money and bonds of which I may die possessed," and the principal was given to religious and charitable institutions, two of the legacies of $10,000 each being subject

to life estates in persons named. The specific legacies given in the will amounted to $90,000.

Mr. Arnold's will contained the following clause: "Having in other ways made full and ample provision for my beloved wife, Isabella Arnold, by turning over to her absolutely a certain portion of my property, I do not by this will give her anything more, as her acceptance of said portion of my property was and is to be taken as a full release of her dower rights under this will." He made specific bequests, aggregating $50,000, to various persons and institutions, and gave the residue of his estate to his three nephews.

Mr. Arnold afterwards stated to several witnesses that he had given bonds to his wife and that bonds which he subsequently bought were for his wife.

On January 4, 1906, Mr. Arnold executed papers constituting Robert J. Cleland his attorney in fact, and in effect transferring all his securities to the three Clelands, retaining, however, a life interest in himself. On the same day he added a codicil to his will, by which he gave his wife all his estate, except the real estate which he had conveyed to the Clelands, and named her as executrix. On May 18, 1909, he executed a further power of attorney to Robert J. Cleland.

On May 27, 1909, Mrs. Arnold executed another will to the same effect as the former one, except that she now made specific bequests to religious and charitable institutions, amounting to $196,000. Her husband took no part in the preparation of the latter will and there is no evidence that he had any knowledge of its contents or execution. Mr. Leitch was again named as executor.

Between July, 1906, and January, 1908, Mr. Arnold purchased $30,000 worth of bonds, which were placed in box 158. He gave Mrs. Arnold, in May, 1906, keys for each of the boxes, retaining duplicate keys for himself. At the time of Mrs. Arnold's death, November, 1910, there were in box 158, bonds aggregating in value $203,-500. On December 30, 1909, on application of Robert

J. Cleland, James T. Arnold was adjudged by reason of age and mental and physical infirmities, to be incapable of managing his affairs and Cleland was appointed his guardian.

The trial judge also found that when Leitch went to the bank with Mr. Arnold in May, 1906, he was neither employed as counsel by him nor was he acting as his counsel. The relation of counsel did not begin until about July, 1906, and he then became counsel at the same time for both Mr. and Mrs. Arnold, concerning the same subject matter in which both were equally interested. His testimony relates throughout either to what took place in the presence of both Mr. and Mrs. Arnold, or to matters in which they were mutually concerned and about which he was employed by both. He represented no opposing interests, while acting for both clients but was employed to put in legal form certain matters about which they were mutually agreed.

The court below held that there was a valid executed gift of the bonds in box 158, by James T. Arnold to his wife, and the defendants were enjoined from selling, transferring or delivering any of the bonds to any person other than plaintiff or from interfering with plaintiff's possession of the same.

Error assigned was the decree of the court.

D. T. Watson and Wm. M. Hall, for appellants.—The declarations of an alleged donor are admissible only when they accompany the act of delivery, and then only for the purpose of showing the intent of such delivery and not the fact of delivery itself: Scott v. Berkshire County Savings Bank, 140 Mass. 157 (2 N. E. Repr. 925); Chambers v. McCreery, 106 Fed. Repr. 364.

No valid delivery, actual or constructive, takes place if the donor retains control or possession or power of disposal over the subject of the gift: Walsh's App., 122 Pa. 177; Fross' App., 105 Pa. 258; Allen-West Commis-

sion Co. v. Grumbles, 129 Fed. Repr. 287; Chambers v. McCreery, 106 Fed. Repr. 364; Bauerschmidt's Estate, 97 Md. 35 (54 Atl. Repr. 637); Millard v. Millard, 221 Ill. 86 (77 N. E. Repr. 595); Young v. Young, 80 N. Y. 422.

Delivery of key was insufficient: Tompkins v. Leary, 134 N. Y. App. Div. 114 (118 N. Y. Supp. 810); Keepers v. Fid. Title & Dep. Co., 56 N. J. Law 302 (28 Atl. Repr. 585).

W. B. Rodgers, for appellee.—Leitch was competent: Goodwin Gas Stove & Meter Co.'s App., 117 Pa. 514; Seip's Est., 163 Pa. 423.

Evidence of delivery was sufficient: Herr's App., 5 W. & S. 494; Parker's Est., 34 W. N. C. 376; Garrison v. Union Trust Co., 129 N. W. Repr. 691.

OPINION BY MR. JUSTICE POTTER, February 5, 1912:

Forty-five assignments of error are here filed, but they actually raise but three questions: First, whether there was a gift of bonds by James T. Arnold to his wife, perfected by delivery; Second, whether Robert H. Leitch, upon whose testimony plaintiff's case largely depended, was a competent witness, and Third, whether evidence of declarations by James T. Arnold that he had given the bonds to his wife, or was purchasing them for her, was admissible. The learned judge of the court below made full and complete findings of fact, and stated clearly his conclusions of law, and determined, upon all the facts and circumstances of this case, that there was a gift inter vivos of the bonds in question, made by James T. Arnold to his wife, Isabella. After a careful consideration of the arguments of counsel, and a close examination of the evidence, and of the law applicable to the issue raised, we see no sufficient reason to differ with the conclusion reached by the trial judge. His opinion shows that he had clearly in mind the essential elements of a valid gift inter vivos, and

we are not convinced that he erred in the application of those principles to the facts which he found were established by the testimony in this case. Counsel for appellants contend strongly that the evidence does not show that there was an actual delivery of the bonds. But in determining this question, the situation of the subject of the gift, and its nature, must be considered. A controlling principle is thus stated: "If the language used by the donor is clear and unambiguous, showing a clear intent to make the gift and a belief on his part that he had done all that was necessary to complete it, then the act of delivery if slight and ambiguous, will be aided thereby, not, however, dispensing with an actual delivery: but rendering the gift valid where it would be deemed invalid if the acts of delivery were uncertain or ambiguous." Thornton on Gifts, sec. 148. The parties here were husband and wife living harmoniously and taken up with matters of mutual interest: and that must be kept in mind. The writer just quoted very properly says: "The relation of husband and wife is so close, and their every day life is so blended that it is often difficult to tell when the husband has perfected a gift to his wife by delivery; * * * The law takes cognizance of these relationships, of the daily contact of such a donor and donee, of the blending, as it were, of their daily walks and acts, and will construe an act to amount to a delivery where it often would not if the donor and donee were not members of the same family. The law does not dispense with an actual or constructive delivery, but it accepts the acts of the donor, if a clear intent to give is shown, as amounting to a delivery, when it would not do so if the donor and donee occupied separate habitations and were not members of the same family." Thornton on Gifts, sec. 169. This principle is recognized in our Pennsylvania cases. Thus in Herr's Appeal, 5 W. & S. 494, where a husband placed coin in a chest or trunk, and stated that it was for his wife, and that it was his wife's, it was held that there was a gift

of the coin to the wife.  In that case the husband had access to the chest, and there was no manual delivery of the coin by the husband to the wife.  He merely put it in the chest, and said it was hers.  Practically the same thing was done in the present case, except that here the box in which the bonds were placed was in the vaults of a bank, and not in the house where the parties made their home.  It will be noted that Herr's Appeal is authority for the admission of evidence of the husband's declarations, as it holds that both subsequent declarations and acts of the donor (the husband) were evidence of the gift.  To the same effect was the decision in Wise's Estate, 182 Pa. 168, where MR. JUSTICE MITCHELL said (p. 171) : "Three other witnesses testified to decedent's repeated declarations, about the time of the gift, that all his property was to be his wife's. * * * These declarations would not of course establish a gift, but they are confirmatory of the intent with which the actual delivery of the securities testified to by the other witnesses was made.  The evidence as a whole was sufficient, if believed, to sustain the claim of a gift; the auditor and the judge below believed it; and we have not been convinced that they were in error in so doing."  These cases, which we follow, dispose of the objection raised upon behalf of appellants, to the admissibility of evidence of declarations by Mr. Arnold, the husband, that he had given the bonds to his wife, or was purchasing them for her.  Such evidence was clearly admissible.  Herr's Appeal was closely followed in Crawford's Appeal, 61 Pa. 52, where Mr. Justice Agnew, dwelling upon another phase of the decision, said (p. 56), in referring to Herr's Appeal, "There the subject of the gift was money unaccompanied with any declaration amounting to a trust.  There money was kept in a lower or false bottom of a trunk to which the husband had access at all times, and to which he often went without the presence of his wife.  The money continued just as much within his actual dominion as if it had been kept

by him in another place. There was no evidence of actual delivery or passing over of the money, as the gift was inferred from the declarations of the husband that the money was his wife's, his keeping it in the lower division of the trunk, apart from his other money, his adding to it from time to time and taking none away, and his wife's carrying the keys. There was no formal delivery, no counting of the money, no specific sum stated by him; indeed the sum was not known except as a probable or supposed amount, so that the case in fact rested directly on the declarations of the husband, and the setting aside that much money apart from his own; while his actual access and control over it, and the legal unity of person, made the possession as much his own as his wife's." The facts of the present case bring it within the principle of the decision just cited. There is evidence here that Mr. Arnold obtained an additional box in the safe deposit vault, and designated it as his wife's box, saying that he was going to give to Mrs. Arnold all his negotiable bonds, and would put them in this box number 158; that he placed certain securities in the box at the time; that he gave her a key to it, and provided that she should have access to it whenever she wished; that she did have such access to the box thereafter, coming to the bank at times for that purpose in company with Mr. Arnold, and sometimes alone; that Mrs. Arnold said in the presence of her husband that he had given her all his bonds, and that she was to get any thereafter purchased by him; that Mrs. Arnold produced a list of bonds, which he said belonged to his wife; that his own will and that of Mrs. Arnold were then prepared in accordance with instructions, and in his own will he declared that he had turned over to Mrs. Arnold a certain portion of his property, which she had accepted, and that Mr. Arnold read his wife's will and witnessed its execution, in which will she bequeathed a large estate, when at the time she had nothing to bequeath unless she was then

owner of the bonds. There was also evidence that from time to time thereafter Mr. Arnold placed other bonds which he purchased, in the same box, and that nothing but such bonds were placed therein, he having two other boxes in the same vault, in which he kept his own securities and valuable papers. Under the principle of Herr's Appeal, as cited above from Crawford's Appeal, all this was evidence from which the fact of delivery of the bonds could be found. In Crawford's Appeal a husband placed upon his books, to the credit of his wife, the sum of $3,000, and credited interest thereon from time to time. It was held that the facts of the transaction amounted to evidence of an executed gift. In cases of this character it is not necessary that any eye witness should be produced as to the fact of delivery; words of the donor indicating that he had renounced ownership are sufficient. Judge Penrose puts this clearly in Malone's Estate, 8 W. N. C. 179, where he says (p. 182) : With regard to the proof of actual delivery, it is not necessary that the witnesses shall have seen it take place. The bonds, or the notes, or the policy may have been at the time already in the custody of the donee, and in such case words indicating that the donor renounces all ownership would undoubtedly be sufficient." He further says that "the delivery may be proved by the declarations of the donor, just as the gift itself may be; and when the donor declares that he had given at a previous time, and that the donee had then become the owner, it is implied that delivery, and indeed every other formality necessary to create a gift, had taken place. The law always presumes knowledge of its requirements."

In the present case, without going into details of the testimony we may say that there are five witnesses, Mrs. Campbell, Mr. R. H. Leitch, Mr. Clark, Mr. Jenkins and Mr. Phillips, whose testimony as to the acts and declarations of Mr. Arnold, constitute ample justification, we think, for the findings of fact by the

learned trial judge, and, upon those findings, his conclusion of law that they make out all the essentials of an executed gift, is warranted. This conclusion is further buttressed by the language of the wills already referred to, which were executed simultaneously by Mr. and Mrs. Arnold. In the will of Mr. Arnold he speaks of having turned over to his wife absolutely a certain portion of his property, and for that reason gives her nothing in that will. In the will of Mrs. Arnold, she gave to her husband the income of her bonds for life and after his death directed that the principal of her estate should be devoted to benevolent purposes. The evidence shows that Mrs. Arnold had little estate of her own, and therefore these references in the wills to property of Mrs. Arnold would be without meaning or significance, except upon the theory that the bonds had been given to her, and were subject to her disposal in her will.

It appears from the evidence that each knew and approved of the contents of the other's will. The trial judge was impressed by this fact for he says, "These two wills, with the testimony of witnesses as to the declarations of the husband, and those of his wife made in his presence, before, at the time of, and after the execution of these wills, force the mind to the conclusion that he had made a gift of his bonds to his wife, and that she had accepted them as her share of his estate."

If the bonds became the property of the wife, as and when they were placed in the safe deposit box for her by her husband, then all that he did with them thereafter, as disclosed by the evidence, was not inconsistent with such ownership by the wife. His access to the box and to the bonds was with her permission, and for purposes stated by her and consistent with her ownership. She was at liberty to give the coupons to her husband and to allow him or any other person to make sale of the bonds for her in case of necessity and

to reinvest the funds in other securities. This is what seems to have been done. That she should have relied upon her husband for these · services was. entirely natural.

Counsel for appellants cite the decisions in Clapper v. Frederick, 199 Pa. 609, and Ashman's Estate, 223 Pa. 543, as sustaining their contention that there was no valid gift here. But in neither case was the alleged gift from husband to wife. In Clapper v. Frederick, the evidence showed merely an intention to give. There was no testimony at all showing delivery. In Ashman's Estate the alleged donor stated in writing that he gave certain bonds to his son, but added that they were "not to be used until after my death." The decision was based on the express grounds (p. 550) that the retention of control over the bonds was inconsistent with the claim of an executed gift and that the writing showed only a testamentary gift which was revoked by a subsequent will.

Counsel for appellants question the competency of R. H. Leitch as a witness, on the ground that he was counsel for James T. Arnold. But the evidence shows, and the court below finds as a fact, that at the time Mr. Leitch went with Mr. Arnold to the bank, and when the bonds were transferred in his presence to box 158, the relation of attorney and client did not subsist between them. Afterwards he was employed as counsel for both Mr. and Mrs. Arnold, and the transactions about which he testified, were their joint business and the conversations took place in the presence of both. Under these circumstances he was a competent witness: Goodwin Gas Stove & Meter Company's Appeal, 117 Pa. 514; Seip's Estate, 163 Pa. 423; Hummel v. Kistner, 182 Pa. 216.

The assignments of error are dismissed, and the decree of the court below is affirmed.