Reist Estate.

Argued November 13, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Harris C. Arnold,* with him *Arnold & Bricker,* for appellant.

*F. Lyman Windolph,* with him *James N. Lightner,* for appellee.

OPINION BY BALDRIGE, P. J., December 14, 1945:

This appeal is from the decree of the court below sustaining an alleged gift inter vivos of a grandfather's clock. There is very little, if any, conflict in the evidence, which may be stated quite briefly.

The testatrix, Mrs. Susan Landis Reist, died June 16, 1941, leaving a will dated February 24, 1938, in which she directed that all her furniture and household goods be divided among her children in such manner as they may agree. She was survived by her husband, Linn R. Reist, and three children, to wit, the claimant Linnaeus Landis Reist, John L. Reist and Anna Reist Baird. Her sons were named, and qualified, as executors. They filed an inventory and appraisement dated August 9, 1941, listing the household goods valued at $525.00, and included the grandfather's clock in question, which was valued at $225.00. Linnaeus Landis Reist thereafter discovered in the drawer of a mahogany desk ten codicils, one of which bequeathed the desk to him. These codicils were admitted to probate April 18, 1942. They gave a

portion of the testatrix's personal property to her children and grandchildren; none of them included the clock in question. In the same drawer where the codicils were lodged, claimant found a writing consisting of two paper labels pasted on a blank sheet of an old bankbook. It is upon this bit of evidence that he mainly relies to establish the alleged gift. The first of the labels, written by decedent except for five typewritten words, reads as follows: "My grand-father clock. *This is the property of* Linnaeus Landis Reist Sr. you shall give this clock to (Signed) Susan Landis Reist." (Italics typewritten.) The second label, pasted a short distance below the first, was entirely in decedent's handwriting and read as follows: "Linnaeus Landis Reist Sr. shall give this clock to Linnaeus Landis Reist Jr. when he is thirty-five years old (Signed) Susan Landis Reist." The writing was dated "October 17, 1934," about four years prior to the date of her will.

Claimant testified that as executor he caused the clock to be included in the inventory and appraisement of his mother's estate as he was then an employe of the Department of Revenue, Inheritance Tax Division, and did not want to be criticized for not listing it for tax purposes. Testimony was received over objection showing that at the time of the appraisement the father made the bare statement that the clock belonged to the claimant. We are assuming that his declarations were competent and admissible: *In re Sadowski's Estate,* 158 Pa. Superior Ct. 119, 43 A. 2d 907. If a prior gift during the donor's lifetime had been shown, at best that testimony would be merely confirmatory; it does not establish that the gift was actually made. It will be noted that he gave no particulars as to when, or the manner in which, title was acquired. The explanation given for the clock remaining in the testatrix's house was that it was too tall for the claimant's low-ceiling living-room. On March 23, 1942, Linn R. Reist filed an election to take against his wife's will. In an adjudication of

the account filed by the executors on October 19, 1942, he was awarded an amount equal to one-third of the personal property, exclusive of the clock. He died December 1, 1942, and was therefore unavailable as a witness at the hearings before the Orphans' Court.

The pivotal question before us is: Was the evidence sufficient to support the finding of a gift?

An essential element required to be proved in support of a gift inter vivos is an unmistakable intention of the owner to give, to divest himself of title and possession and give dominion over the property to the donee. The evidence " 'must show unequivocally an intention to invest the donee with the right of disposition beyond the recall of the donor . . .' ": *Leadenham's Estate*, 289 Pa. 216, 220, 137 A. 247. Delivery is also a requisite, and must be established by clear and precise evidence. We recognize that no absolute rule can be stated as to the conduct which constitutes a sufficient delivery. That element depends on the nature of the property and attending circumstances. Manual delivery is not always indispensable (*Leitch v. Diamond National Bank*, 234 Pa. 557, 83 A. 416) ; delivery may be constructive or symbolic, according to the circumstances.

Here it was shown only that actual delivery was impractical; standing alone this is not sufficient. There can be no doubt that the testratrix retained such possession over the clock that she could have sold, or otherwise disposed of, it at any time until her death. No one could have questioned her action by producing proof of ownership. " 'Though every other step be taken that is essential to the validity of a gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of consequence:' Thornton on Gifts, etc., p. 105." *Clapper v. Frederick*, 199 Pa. 609, 613, 49 A. 218. See, also, *Allshouse's Estate,* 304 Pa. 481, 487, 156 A. 69; *Chapple's Estate,* 332 Pa. 168, 2 A. 2d 719; *Pyewell's Estate,* 334

Pa. 154, 160, 5 A. 2d 123; *Brown's Estate,* 343 Pa. 230, 239, 240, 22 A. 2d 821; 24 Am. Jur., Gifts, §§24, 27; 38 C. J. S., Gifts, §§19, 22.

The lower court obviously felt that *Sherman v. Stoner,* 78 Pa. Superior Ct. 189, largely controlled the instant case. There the plaintiff in replevin claimed title to a grandfather's clock by gift inter vivos from his aunt. The evidence showed plaintiff for thirty-five years had lived with her. Many years prior to her death she went to her lawyer and declared she had given the clock to her nephew. At her request the attorney prepared a paper certifying the clock was the property of the plaintiff and stated inter alia: "I gave the same to him, as it was the old family clock." She signed the paper then and delivered it to the plaintiff and declared, in the presence of the attorney, that the clock was his, and there would never be any further trouble about it. The lower court, trying the case without a jury, held a gift was not shown because a delivery, actual or constructive, was lacking. We reversed the lower court, holding that a constructive delivery would be presumed as the evidence disclosed a clear and unmistakable intention to make a gift of this large and unwieldy article to her nephew, giving him the power of disposal and the right of absolute possession. Here, the only proof of either intention to give or delivery, is the writing on the labels pasted in the bankbook. There is nothing to indicate that she gave her son that dominion over the clock that he had power of disposal and absolute right of possession. No oral or written declarations indicative of a clear and unequivocal intent to give, or that she had given the clock to her son, were shown to have been made during the donor's lifetime as in *Sherman v. Stoner,* supra, or as in *Hammond v. Lummis* (Conn.), 137 A. 767. The writing was always retained by the mother. Its existence was unknown to others until long after her death. That bit of evidence in itself was insufficient to establish a gift to her son as it falls far short of meeting the test

of a clear and unmistakable intention to give, and a completed gift. Mrs. Reist could have removed all evidence of any intention to make a gift of the clock by simply destroying this writing. No one would have been the wiser. In this aspect the writing must be viewed as ambulatory and revocable, like a will or testamentary disposition. If it be regarded as testamentary in character, it was ineffective as a gift inter vivos and was revoked by the third paragraph of decedent's will. Cf. *Brown's Estate,* supra.

If the quantity and quality of the evidence support the court's finding, we are bound thereby: *Gongaware's Estate,* 265 Pa. 512, 109 A. 276. But whether there is any evidence to sustain the gift, is a question of law for our determination. The cases upholding gifts, present much stronger evidence than is present here. In *Leitch v. Diamond National Bank,* supra, and *Leadenham's Estate,* supra, the facts were strikingly similar. In each a gift of bonds was sustained where the donor rented a separate deposit box, placed the bonds therein, and gave the donee a key to the box, and there was evidence of declarations by the donor to third parties, confirming the fact that a gift had been made.

In *Pyewell's Estate,* supra, Mrs. Pyewell made actual delivery of certain jewelry and securities to her niece, Mrs. Duffey. Evidence of a past gift was produced by the testimony of Mrs. Pyewell's attorney and by a formal bill of sale confirming the prior gifts. In *Chapple's Estate,* supra, the father delivered the stock to his son in the presence of the donee's sister and another witness. The donee then handed the stock to his sister to return to her safety deposit box where the certificates had been before the father made the delivery.

We are aware that less evidence is required to establish a gift from a parent to a child, but even with that relationship in mind we think the evidence fails to meet the legal test. The case in hand resembles in some of its features *Clapper v. Frederick,* supra, and *Ashman's*

*Estate,* 223 Pa. 543, 72 A. 899. In the former a decedent had executed notes to nieces and nephews, and had given them to her agent with instructions to deliver the notes, but without stating when delivery should be made. It was held that there had been no delivery. In *Ashman's Estate,* the writing showed a clear intent to make a gift, but also contained other provisions which indicated a postponement of possession. It was held that the gift was not completed.

In our opinion claimant has failed to establish the essential elements of a valid gift inter vivos. For these reasons, the decree must be reversed, the clock to remain as part of the decedent's estate and be distributed in accordance with the terms of her will.

Decree of the court below is reversed at appellee's costs.