J-A33015-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  TRUST OF SHIRLEY M. REICHARDT, SETTLOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  WILLIAM REICHARDT | |
| | No. 886 EDA 2014 |

Appeal from the Order February 10, 2014
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2012-X0898

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 06, 2015**

William Reichardt appeals from the order entered in the Orphans'
Court Division of the Court of Common Pleas of Montgomery County,
denying his exceptions to the adjudication dated November 22, 2013.  Upon
careful review, we affirm.

On December 28, 2000, Shirley M. Reichardt ("Settlor") executed a
Revocable Living Trust ("Trust") in which she named herself as Trustee and
lifetime beneficiary.  Settlor appointed successor trustees in the following
order:  Virginia C. Kennedy (Settlor's sister), Debra Link Nasielski (Settlor's
cousin) and Reichardt (Settlor's son).  Upon Settlor's death, Virginia
Kennedy was to receive income and principal, in the discretion of the

---

[*] Retired Senior Judge assigned to the Superior Court.

trustee, for her health, maintenance and support. At Virginia's death, the remainder was to be distributed to Settlor's surviving grandchildren in equal shares. *See* Revocable Living Trust, 12/28/00, at Article Four. Settlor retained the right to amend or revoke the trust, *see id.* at Article One, and to withdraw "all or any portion of the Trust assets at any time[.]" *Id.* at Article Two. Settlor assigned, *inter alia*, all of her tangible personal property to the trustee.

On October 31, 2006, Settlor executed an amendment to the Trust in which she designated that, upon Settlor's death, Reichardt would receive the trust estate, "outright and alone." She also appointed new successor trustees, in the following order: Dacy Boyd (Settlor's friend) and Reichardt.

On January 28, 2010, Settlor again amended the trust by revoking the prior trust amendments, as well as Articles Four and Five of the Trust, in their entirety. Pursuant to this amendment, upon Settlor's death, the trustee was to "hold and distribute the principal and accumulated income of the Trust," paying to Reichardt the monthly sum of $1000.00, and to apply directly for his benefit such additional principal and income as trustee, "in Trustee's sole discretion may consider desirable for his health, maintenance and support[.]" Third Amendment to Revocable Living Trust Agreement, 1/28/10, at Article Four. Settlor also amended Article Five of the trust to appoint the following successor trustees: Boyd, followed by Griffin Wright.

Settlor died on July 10, 2011, at which time Boyd assumed the position of trustee. On March 6, 2012, Reichardt filed a petition for citation,

seeking an order requiring Boyd to file an account. The court ultimately entered such an order on June 11, 2012, and Boyd filed her First and Interim Account on August 23, 2012. Reichardt filed objections to the account, in which he alleged, *inter alia*, that Boyd failed to account for numerous items of personal property belonging to Settlor that Boyd had taken for herself. In her response to the objections, Boyd admitted that she had received certain items from the Settlor as gifts in the months before she died, but denied having improperly "taken" anything from the trust estate. Boyd further asserted that, after Settlor's death, she granted Reichardt unfettered access to the Settlor's residence and the personalty located therein.

On July 22, 2013, the Orphans' Court held a hearing on Reichardt's objections. Thereafter, the court issued an adjudication in which it dismissed the objections on the basis that, based on Boyd's credible testimony, Settlor had given the items in question to Boyd prior to her death, during the time in which Settlor was trustee of the trust. As a trustee is only responsible for her actions during the duration of her trusteeship, the court found that Boyd was not required to account for property that was disposed of prior to her assuming her duties as trustee.

Reichardt filed exceptions to the adjudication, which were dismissed after oral argument before the Orphans' Court *en banc* by order dated

February 10, 2014.  This timely appeal follows, in which Reichardt raises the following issues for our review:[1]

1. Whether it is improper for the trustee of a spendthrift trust to make a gift of trust property.

2. Assuming arguendo that a trustee of a spendthrift trust may make a gift of trust property when such a gift is not delivered until the death of the trustee-donor, has there been an improper gifting of trust property[?]

3. Whether the trustee-donee of the involved gifting should have had to account for the property received and have been appropriately sanctioned for her wrongful actions.

Brief of Appellant, at 3.

We begin by noting that our standard of review of a decree of the Orphans' Court is deferential.  **Estate of Harrison**, 745 A.2d 676, 678 (Pa. Super. 2000).

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.  However, we are not constrained to give the same deference to any resulting legal conclusions.  Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

---

[1] The Orphans' Court did not issue an order requiring Reichardt to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and relied upon the reasoning set forth in the adjudication in lieu of issuing a Rule 1925(a) opinion.

*Estate of Pendergrass*, 26 A.3d 1151, 1153 (Pa. Super. 2011) (internal citations and quotation marks omitted).

Reichardt first claims that any gifts made by Settlor during her life were improper because Settlor included a spendthrift clause in the trust document. However, Reichardt did not raise this claim before the Orphans' Court. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Accordingly, this claim is waived.[2]

Next, Reichardt asserts that, to the extent that certain gifts made by the Settlor to Boyd were not delivered during the lifetime of the Settlor, the property continues to belong to the trust and is subject to an accounting by Boyd. Specifically, Reichardt claims that property Settlor gave to Boyd during Settlor's lifetime, kept in her house until her death, remains trust property because the gifts were not completed. This claim has partial merit.[3]

---

[2] Even if this claim were not waived, it would be meritless. The purpose of a spendthrift clause is to "insulate[] the assets of [a] trust[] from the incursions of **creditors** until such time as those assets, either as principal or income, are delivered into the hands of the beneficiary." *In re Trust of Ware*, 814 A.2d 725, 732 (Pa. Super. 2002) (emphasis added). Here, there is no involvement by creditors of either the Settlor or beneficiary. As such, the spendthrift clause is irrelevant to Reichardt's claim.

[3] Nevertheless, based upon our resolution of Reichardt's third appellate issue, *infra*, the Orphans' Court's error with respect to this claim is harmless.

Some factual background is in order. Boyd and Settlor were close friends for many years, having met in 1997 in a YMCA water aerobics class. When, in 2009, Settlor was diagnosed with inoperable lung cancer, she appointed Boyd as her agent under a medical power of attorney and placed her in charge of her funeral arrangements. During the period following her diagnosis, Settlor began actively disposing of her personal property by giving it away to friends, health care aides and "anybody who walked through the door." N.T. Trial, 7/22/13, at 65. Settlor, who had given Boyd items of personal property throughout the course of their friendship, was insistent upon giving Boyd numerous items prior to her death. One such group of items consisted of a set of blue and white porcelain dishes. Boyd testified that, although she had received some of the dishes outright, Settlor wished to keep certain of the dishes as decoration until her death. Accordingly, Settlor wrote a note confirming that Boyd was to receive the dishes upon her death. In addition, Boyd testified that Settlor gave her certain artwork, but that she declined to take it while Settlor remained living "because it [would make] the walls look cold[.]" *Id.* at 97.

As successor trustee, Boyd was responsible for disposing of Settlor's personal property and preparing her house for sale after Settlor's death. Boyd testified that she gave Reichardt free access to the house and encouraged him to take whatever items of personal property he wished. After Reichardt had made his selections, Boyd arranged for a moving truck

to deliver the items to Reichardt's storage unit. At trial, Reichardt presented photographs purporting to show numerous household items that were no longer present after Settlor died, in an attempt to demonstrate that Boyd had improperly disposed of Settlor's property. However, the photos were dated 2007 and Boyd testified that Settlor had disposed of a significant portion of her property between that time and her death. The Orphans' Court found Boyd's testimony to be credible.

The procedural posture of this matter is key to its disposition. This dispute arose in the context of the audit of Boyd's account of her administration of the trust, which commenced at Settlor's death. A successor trustee may not be held personally liable for the acts or omissions of her predecessor and has no duty to investigate his or her acts or omissions. 20 Pa.C.S.A. § 7770. Accordingly, Boyd is not responsible to account for any property that Settlor disposed of during her life, prior to the date Boyd assumed the trusteeship. The only property Boyd may be held accountable for is that which belonged to the trust during the time of her administration. *See Large's Estate*, 181 A. 859, 861 (Pa. Super. 1935) ("The accountant can only be called upon to account for its own management of the trust estate.").

In the argument section of his brief, Reichardt does not specifically identify those items of personal property that he believes should be considered trust property. However, based upon our review of the record

and Reichart's statement of facts, it appears that the only items at issue[4] are the Settlor's artwork – left on the walls voluntarily by Boyd – and that portion of the blue and white porcelain dishes that Settlor intended to give to Boyd, but desired to keep as decoration until her death.

In his brief, Reichardt, quoting two *inter vivos* gift cases, argues that the gift of those items remaining in Settlor's home at her death "must fail in the absence of proof of actual or constructive delivery" to Boyd. Brief of Appellant, at 14. **See Rankin v. Kabian**, 201 A.2d 424 (Pa. 1964) ("The well settled prerequisites to establishing an *inter vivos* gift are donative intent and delivery with intent to vest title in the donee.").

In response, Boyd argues that Reichardt's "insistence that this case be analyzed and determined under the legal principles applicable to gifts is misplaced," Brief of Appellee, at 14, because, as then-trustee, Settlor had the right to dispose of trust assets as she wished.

---

[4] In his statement of facts, **see** Brief of Appellant, at 3-7, Reichardt specifically mentions porcelain figurines, blue and white porcelain dishes, a dining room set, a "table and other furniture," and paintings/art. At trial, Boyd testified that Settlor gave her, and she took, the porcelain figurines and many of the blue and white porcelain dishes prior to Settlor's death. Boyd also testified that Reichardt acquiesced to Boyd taking the dining room set. Boyd testified that she took the "table and other furniture" during the clean-out of Settlor's home, after providing Reichart with ample opportunity to take anything he wished from the premises. Accordingly, the only items that were allegedly "gifted" to Trustee but not delivered during Settlor's life are the remaining blue and white porcelain dishes and the paintings/art. It is only these items we need address.

While it is correct to say that Settlor had the right to dispose of trust property in any way she wished, in order to determine whether the items in question remained trust property at Settlor's death, we must nonetheless engage in an *inter vivos* gift analysis.

> An essential element required to be proved in support of a gift *inter vivos* is an unmistakable intention of the owner to give, to divest himself of title and possession and give dominion over the property to the donee. The evidence must show unequivocally an intention to invest the donee with the right of disposition beyond the recall of the donor[.] Delivery is also a requisite, and must be established by clear and precise evidence. We recognize that no absolute rule can be stated as to the conduct which constitutes a sufficient delivery. That element depends on the nature of the property and attending circumstances. Manual delivery is not always indispensable; delivery may be constructive or symbolic, according to the circumstances.

**Reist Estate**, 44 A.2d 847, 848-49 (Pa. Super. 1945) (internal citations and quotation marks omitted). "Though every other step be taken that is essential to the validity of a gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of consequence[.]" **Id.** at 849.

The facts of **Reist**, which involved a dispute over the ownership of a grandfather clock, are strikingly similar to those of the instant matter. There, decedent left a will directing that all her furniture and household goods be divided among her children in such manner as they may agree. Decedent's executors filed an inventory that included a grandfather clock. Subsequently, decedent's son, Linnaeus, found a writing, which predated

decedent's will, in which decedent directed that the grandfather clock be given to him. At trial, testimony was given demonstrating that the decedent's husband had stated that the clock belonged to the son. It was also explained that the clock remained at the decedent's home because it was too tall to fit in the son's home. The trial court awarded the clock to the son.

On appeal, this Court reversed, finding insufficient evidence of intent and delivery:

> [T]he only proof of either intention to give or delivery, is the writing on the labels pasted in the bankbook. There is nothing to indicate that she gave her son that dominion over the clock that he had power of disposal and absolute right of possession. No oral or written declarations indicative of a clear and unequivocal intent to give, or that she had given the clock to her son, were shown to have been made during the donor's lifetime[.] The writing was always retained by the mother. Its existence was unknown to others until long after her death. That bit of evidence in itself was insufficient to establish a gift to her son as it falls far short of meeting the test of a clear and unmistakable intention to give, and a completed gift. [Donor] could have removed all evidence of any intention to make a gift of the clock by simply destroying this writing. No one would have been the wiser. In this aspect the writing must be viewed as ambulatory and revocable, like a will or testamentary disposition.

*Id.* (internal citations omitted).

Similarly here, with respect to the blue and white porcelain dishes, the Settlor retained both the property itself and the writing indicating her intent to give the property to Boyd. Boyd's possession of the dishes was postponed until a later date, i.e., the death of Settlor. In the interim, Settlor

could have disposed of the dishes as she wished. Likewise, she could have destroyed the note evidencing her donative intent. In sum, although Settlor may have intended to give the plates to Boyd, she failed to make "complete and unconditional delivery" such as is "essential to the perfection of a gift." *Ashman's Estate*, 72 A. 899, 901 (Pa. 1909) (no completed gift of bonds where, despite finding that writing contained clear intent to make present gift, delivery lacking because writing further specified bonds "not to be used until after [donor's] death"). *Cf. Sherman v. Stoner*, 78 Pa. Super. 189 (1921) (completed gift of grandfather clock found where donor: (1) had attorney prepare paper certifying she gave clock to donee; (2) signed paper and delivered same to donee; and (3) made confirmatory declaration in presence of attorney and donee that clock belonged to donee); *Chapple's Estate*, 2 A.2d 719 (Pa. 1938) (completed gift found where donor father delivered stock to son in presence of two witnesses, then donee son handed stock to sister to return to safe deposit box where certificates had previously been prior to delivery of gift).

Our conclusion differs as to the artwork given to Boyd by Settlor during her life, but left on the walls until Settlor's death. In the case of this property, Boyd was given unfettered control over the artwork by Settlor, but, out of sympathy to Settlor, chose to leave it on the walls so that they would not appear bare while Settlor was still living in the house. In essence, Boyd took delivery of the art but immediately loaned it back to the Settlor. *See Chapple's Estate, supra*. Accordingly, Boyd was under no obligation

to account for the artwork in question, as Settlor made a completed gift of the property prior to her death.

Lastly, Reichardt claims that Boyd should have accounted for the property she received and that the court should have sanctioned her for her "wrongful actions." Brief of Appellant, at 3. As we stated above, based upon our review, the only items for which Boyd failed to properly account are the blue and white porcelain plates that Settlor specifically requested remain in her home until her death. However, Reichardt failed to present any evidence as to the value of those plates. Accordingly, although those items should have been included in Boyd's account, we are unable to conclude that the Orphans' Court erred in failing to surcharge Boyd for their omission, which in any event was likely *de minimis.* **See Killey Trust**, 326 A.2d 372, 375 (Pa. 1974) (one who seeks to surcharge fiduciary for breach of trust must bear burden of proving particulars of wrongful conduct).

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2015